UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
                                               )
HELEN MEIMARIS AS EXECUTRIX and LEGAL          )        1:18-cv-4363 (GBD)(BCM)
REPRESENTATIVE OF THE ESTATE OF ALKIVIADES     )
MEIMARIS AND HELEN MEIMARIS,                   )
                        Plaintiffs,            )
                                               )
                                               )
                                               )
        -against-                              )
                                               )
                                               )        -
                                               )
JOSEPH E. ROYCE, LAWRENCE A. BLATTE,           )
TULIO PRIETO , JAIME LEROUX,                   )
TBS Shipping Services Inc., Guardian Navigation , )
Services Inc., Gruposedei and Tecnisea,        )
                        Defendants.            )
_____X

_____
_____

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS, ROYCE AND BLATTE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND DEFENDANTS' REQUEST TO STAY DISCOVERY**

_____
_____

**ALKISTIS G. MEIMARIS, ESQ.**
***Attorney for Estate of Alkiviades and Helen Meimaris***
**240 Fifth Avenue, suite M250**
**New York, New York   10001**
**(201) 615-3220**

**Table of Contents**

Preliminary Statement..................................................................................................1

Allegations and Claims in the Third Amended Complaint................................................2

    I.      The Claims in the Third Amended Complaint................................................3

Procedural Background ..............................................................................................4

Argument.................................................................................................................5

    I.      General Legal Standards..............................................................................5

    II.     Plaintiff Helen Meimaris Does have Standing to Sue as an Individual.............................7

    III.    Claim one Should Not Be Dismissed.............................................................8

           a.       Claim One is Not Time Barred.............................................................8
           b.       The TAC Does Not Fail to Plead the Elements of Breach of Fiduciary Duty & Fraud...................................................................................9

    IV.    Claim Two Should Not Be Dismissed...........................................................11

           a.       Claim Two is not Time Barred.............................................................11
           b.       Claim Two is Cognizable under New York Law.................................12
            c.       The TAC Pleads All Elements of Fraud and Breach of Fiduciary Duty.............13

    V.     Claim Three Should Not Be Dismissed...........................................................14

           a.       Claim Three is Not Time Barred.............................................................14
            b.       Claim Three is Not a Collateral Attack on the Bankruptcy Court's Order..........15

    VI.    Claim Four Should Not Be Dismissed...........................................................16

            a.       Clam Four is Not Time Barred.............................................................16
            b.       The TAC Pleads all of the Elements of Fraud.................................17

    VII.    Claim Five Should  Not Be Dismissed...........................................................18

            a.       Claim Five is Not Time Barred.............................................................18
            b.       Claim Five is More than Adequately Plead.................................19

    VIII.  Claim Six Should Not Be Dismissed...........................................................20

    IX.    The Demand for Punitive, Exemplary & Special Damages Should Not Be Dismissed....20

    X.     The Demand for Attorneys Fees Should Not Be Dismissed.............................21

    XI.    Discovery Should Not Be Stayed...........................................................21

    Conclusion..................................................................................................22

## Table of Authorities

*3rd & 6th, LLC v. Berg,*
    *149 AD 3D 794,795-796 (2d Dep't 2017)*................................................*9,11,14,15,17,19*

*Adams v. NY State Educ. Dept.,*
    *752 F. Supp. 2d 420,455 n.39 (S.D.N.Y. 2010)*................................................*7*

*Affordable Hous. Assoc. Inc. v. Town of Brookhaven,*
    *150 A.D. 3d 800 (2d Dep't 2017)*................................................*9,11,14,16*

*AHW Inv. partnership v. Citigroup,*
    *980 F.Supp 2d 510,521  (S.D.N.Y. 2013)*................................................*12*

*Appell v. L.A.G. Corp,*
    *2008 NY Slip Op. 31988*................................................*4*

*Brass v. American Film Technologied Inc.,*
    *987 F.2d. 142,150 (2d Cir. 1993)*................................................*5*

*Chase Manhattan v. Perk,*
    *65 A.D.2d 207,211 (4th Dep't 1978)*................................................*12*

*Clearveiw Corp. v. Gheradi,*
    *88 A.D.2d 461,468 (2d Dep't 1982)*................................................*12*

*Conley v. Gibson,*
    *355 U.S. 41, 45-46, 789 Ct. 99, 102 2 L.Ed. 2d 80 (1957)*................................................*6,18*

*Cost Controls v. AM Preferred Prescription,*
    *1997 Bankr. LEXIS 387, at *64 (Bankr. E.D.N.Y. Mar. 21, 1997)*................................................*6*

*Continental Cas. Co. v. PricewaterhouseCoopers LLP.,*
    *15 N.Y.3d 266(2010)*................................................*12*

*Datto Inc, v. Braband,*
    *856 F.Supp 2d 354,360 (D.Comm. 2012)*................................................*6*

*Demchik v. Gen. Motors Corp.,*
    *821 F2d 102,106*................................................*9,11,15,17,19*

*Drucker v. Mige Assoc.,*
    *11,22 AD2d 427,428 (1996)*................................................*10*

*Dry Clean Depot Inc. v. Stock,*
    *U.S.Dist. LEXIS 19786,May *4(S.D.N.Y.  Dec.28, 1992)*................................................*22*

*Easton v. Sundram,*
    *947 F.2d 1011, 1014-1015 (2d Cir. 1991)*................................................*5*

*Flaks v. Koegel*
    *504 F2d 702, (2d Cir 1974)*................................................*22*

*Giblin v. Murphy,*
    *73 N.Y.2d 769,772 (1988)*................................................*22*

*Gluabach v. PricewaterhouseCoopers, LLP.,*
    *2018 Slip. Op. 30875 (U) *12 (Sup. Ct. NY County 2018)*................................................*12*

*Hellenic Lines, Ltd. v. O'Hearn,*
    *523 F.Dupp. 244,247 (S.D.N.Y. 1981)*............................................................................7
*Henneberry v. Sumitomo Corp. Of Am.,*
    *532 F. Supp. 2d 523, 555 (S.D.N.Y.2007)*.................................................................6
*In re TBS Shipping Services, Inc. et Al.,*
    *Case No. 12-22224 (S.D.N.Y.)*.....................................................................................2
*Hutchins v. Utica Mutual Ins. co.,*
    *107 A.D. 2d 871 (3d Dep't 1985)*..............................................................................22
*Izzo v. Town of Smithtown,*
    *151 A.D. 3d 1035 (2d Dep't 2017)*..........................................................9,11,14,17,19
*Kermansha v. kermansha,*
    *580 F.Supp 2d 523 (S.D.N.Y.) 2007*............................................................................6
*Klein v. Hong Kong & Shanhai Hotels, Ltd.,*
    *2007 U.S. Dist. LEXIS 27340, at *7-8 (S.D.N.Y. Apr. 9, 2007)*...........................7
*Lama Holding,*
    *89 N.Y.2d at 421*.......................................................................................................12
*Luchesi v. Perpetto,*
    *72 A.D.3d 909,910 (2d Dep't 2010)*.......................................................9,11,14,17,19
*Mahon v. Ticor Title Ian's. Co.,*
    *683 F3d 59,62 (2d Cir. 2012)*.....................................................................................7
*McDermott v. Torre,*
    *82 A.D.2d 152,153 (1st Dep't 1981)*......................................................9,11,15,17,19
*Merine Ex. Rel. Util. Fund v. Prudential Bache Util. Fund,*
    *859 F.Supp. 715,725 (S.D.N.Y. 1994)*...................................................9,11,14,16,17
*Nuss v. Salad,*
    *2016 U.S. Dist. LEXIS, 98529, at *28-29 (N.D.N.Y. July 28, 2016, No 7:10-cv-0279.*
    .............................................................................................................9,11,14,16,19
*Oji v. Yonkers Police Dept.,*
    *2013 U.S. Dist. LEXIS 136785 at *1 (S.D.N.Y. May 24, 2013)*...........................7
*Ortiz v. Corvetta,*
    *867 F.2d 146,149 (2d Cir. 1989)*................................................................................5
*Prozeralika v. Capital Cities Comm'ns Inc.,*
    *82 N.Y.2d 466,479 (1993)*........................................................................................21
*Ross v. Louise Wire Service Inc.,*
    *8 N.Y.3d 478,489*......................................................................................................21
*Santos v. City of New York,*
    *2012 U.D. Dist. LEXIS 21582 at *3 (S.D.N.Y. Feb 21, 2002)*............................7
*Sullivan v. Keyspan Corp.,*
    *155 A.D. 3d 804, 807 (2d Dep't 2017)*.......................................................9,11,14,17
*Tiberiv v. Cigna Corp.,*
    *89 F.3d 1423 (10th Cir. 1996)*..............................................................9,22,14,16,19

*United States v. Pistoni,*
       *590 F.Supp. 1326 (S.D.N.Y. 1984)*..............................................................12,18
*Walker v. Sheldon,*
       *10 N.Y, 2d 401,405*................................................................................21
*Whitney v. Citibank,*
       *782 F.2d 1106,1118-1119 (2d Cir, 1986)*..............................................22
*You Han Youn v.Chiu,*
       *49 A.D. 3d 535 (NY App Div. 2d Dep't 2008)*........................................12,18

*Statutes*

Federal Elder Justice Act..............................................................................10

F.R.C.P. 12(b)(6)..........................................................................................5

F.R.C.P. 54 (2)(A)..........................................................................................21

N.Y.C.P.L.R. 3016 (b)....................................................................................5,9

N.Y.C.P.L.R. 213b(b)....................................................................................16

U.S. Constitution Art. III §2..........................................................................7

Deceptive Practices Act section 349..............................................................10

**Preliminary Statement**

This Memorandum of Law is respectfully submitted on behalf of Plaintiffs Helen Meimaris as Legal Representative and Executrix of the Estate of Alkiviades Meimaris and Helen Meimaris individually, in opposition to Defendants TBS Shipping Services and Guardian Navigation (collectively "Company Defendants") motion to dismiss Plaintiffs' Third Amended Complaint ("TAC").

The TAC raises seven causes of action, which sound in fraud, breach of fiduciary duty based on fraud and conspiracy to commit fraud. These claims arise out of all of the parties long-standing business relations and business dealing in connection with the TBS International, TBS Shipping Services (now, Guardian Navigation), TBS Commercial Group (a privately held corporation) and the "prepackaged bankruptcy reorganization of Defendant TBS Shipping Services and all of these companies affiliates.

The TAC lays out the manner in which the Defendants defrauded Plaintiffs in an ongoing scheme of fraud, breach of fiduciary duty based on fraud and conspiracy to commit fraud. Defendants accuse Plaintiffs of making conclusory allegations with regard to the Company Defendants, yet it is the Defendants who trivialize their misconduct  Plaintiffs of their rights and interests in TBS Commercial Group, TBS Shipping Services and business investments in TBS Ecuador.

Contrary to Defendants' contentions, the TAC is not "fatally and incurably deficient" [ECF 76].  As will be set forth below in detail, the TAC should not be dismissed because it does not suffer from  deficiencies which cannot be cured by amendment.  The truth,

1

which Plaintiffs, if given the chance can prove that the Defendants committed many wrongful and illegal acts, which caused the injuries to the Plaintiffs as outlined in the TAC.

**The Third Amended Complaint**

In 1993, Captain Meimaris, Mr. Royce, and Mr. McNelis (Mr. McNelis is not a party to this case) formed TBS International ("TBSI")  and TBS Commercial Group ("TBSCG").  Mr.  Blatte later became a partner of TBSI and the TBSCG.   Captain Meimaris had extensive expertise and experience in the technical and operational knowledge of ships, while Mr. Royce only knew the commercial aspects of shipping and Mr. Blatte had absolutely no knowledge of the industry.   (TAC par. 26,28). The parties grew the business, and in 2005, TBSI went public and was listed on the NASDAQ stock exchange. (TAC par. 32) In 2006, Captain Meimaris retired, he received no founder compensation or severance, but remained as a consultant of the Company until he was over 80 years old.  In that capacity he attended conferences, conference calls and traveling to Brazil and Houston for the Company on several occasions. At his 75th birthday party, Mr. McNelis stated to all attendees that TBS' success was due to Captain Meimaris and that they could not have achieved the success without him. (TAC par. 33, 36).

Although TBSI went public, TBSCG remained privately held by the four shareholders. The success of TBSI was short lived, and by 2010-2011, Mr. Royce and Mr. Blatte had run the company to the ground. (TAC par. 37). In 2012, a "prepackaged" bankruptcy was introduced to the U.S. Bankruptcy Court for the Southern District of New York. (*See In re: TBS Shipping Services Inc. et. Al. Case No. 12-22224 (S.D.N.Y.)*  That Court rendered a decision in a record 43 days.   The Bankruptcy case was concluded on June 29, 2012.  The TBSCG was used as part of that case.  Although equity shareholders did not receive recovery for their shares at the time, the Bankruptcy Court in its plan   allowed for recovery for unsecured claims under section 4.8 of the plan, entitled "General Unsecured Claims", allowing claimants to liquidate and enforce their claims.  (ECF No. 70-1 at pg 45 C(11)(ii))

From the period of 2012-2013, Captain Meimaris and his daughters were taking care of his wife, who was very ill.  Upon her recovery, and on the day of his son-in-law's funeral, October 17, 2013, Captain Meimaris found out he was terminally ill and died on December 7, 2013, only 6 weeks later.  His last

words were an apology to his wife and children for what his partners, these Defendants did to him.  That is, taking his life's work and dividing it amongst themselves, leaving Captain Meimaris unable to bequeath his life's work to his family.  Captain Meimaris wrote an affidavit attesting to what his partners had done to him about a week before he passed away. (*See* Meimaris Aff. Ex. 1).  Helen Meimaris was granted letters Testamentary on or about June 11, 2014. (ECF No. 62-1)

## *I.    The Claims in the TAC*

**The** Plaintiffs' claims arise out of an ongoing scheme of wrongful acts by the Defendants sounding in fraud, breach of fiduciary duty based on fraud, conspiracy to commit fraud in connection with the Plaintiffs' interests in TBSI, TBSCG,   TBS Shipping Services ("TBS"), TBS Ecuador and all of their affiliates.

**Claim One:**    The first cause of action asserts that Defendants, Messrs. Royce and Blatte, fraudulently mandated Captain Meimaris not to invest in a real estate business opportunity, specifically warehouses in Ecuador, because a "conflict of interest" existed.  The Defendants falsely represented to Captain Meimaris that he was not allowed to invest due to a conflict of interest. They then invested in the business opportunity themselves, thereby breaching the fiduciary duty they owed to Captain Meimaris. (ECF 62 at 62-74)

**Claim Two:**    The second cause of action asserts that Defendants, Messrs. Royce and Blatte fraudulently mandated Captain Meimaris not to sell the bulk of his shares in TBSI, stating that if a major shareholder sells many shares of a company it would not look good to the public and jeopardize the company.   They actually commanded him not to sell his shares, yet the same month, they sold over $70,000,000.00 worth of shares.  At the time the shares were $51 per share and Captain Meimaris had almost a million shares.  These Defendants through their mandate ultimately deprived Captain Meimaris of about $51,000,000.00.  (*See* Meimaris Aff. Ex's. 1,2, 4)

**Claim Three:**    The third cause of action asserts that Defendants fraudulently pushed Captain Meimaris out of the Bank Reorganization Deal.  In the Bankruptcy Reorganization, the founders, Mr. Royce, Mr. Blatte and Mr. McNelis all received a 10% ownership interest in the new TBS.   Captain Meimaris received nothing as one of the owners of TBSI.  (*See*  Meimaris Aff. Ex. 1,3)

3

**Claim Four:**    The fourth cause of action asserts that Messrs. Royce and Blatte fraudulently stole Captain Meimaris' shares and interests in (TBSCG) and used it as part of the Bankruptcy Reorganization as a condition precedent to the Reorganization  without his consent, authorization or compensation for his interests. (*See* Meimaris Aff. Exs. 1,6,7)

**Claim Five:**    The fifth cause of action asserts that Messrs. Royce and Blatte breached the fiduciary duty owed to Captain Meimaris by virtue of them being business partners by causing and being part of the fraudulent transfer and disappearance of  Captain Meimaris' shares in TBS Ecuador. (*See* Meimaris Aff. Ex. 1,5)

**Claim Six:**    The sixth cause of action asserts Defendants, Messrs. Royce, Blatte and Prieto knowing of Captain Meimaris' severe medical condition, Trigeminal Neuralgia, conspired in a long standing scheme which spanned the course of some years to defraud him through various illegal and wrongful acts: usurping a business opportunity in Ecuador, depriving him of his 10% ownership in TBSCG, depriving him of his ownership in TBS Ecuador, depriving him of his rightful ownership in TBS and depriving him of the right to cash in his shares in TBSI, causing him to lose $51,000,000.00. (*See* Meimaris Aff. Exs. 1-7)

## Procedural Background

On April 3, 2018, Plaintiffs commenced this case in New York Supreme Court, New York, County.  Defendants filed a motion to transfer this case to Westchester County.  Plaintiffs immediately filed opposition papers to Defendants' motion to transfer.  A telephone conference was scheduled between Plaintiffs, Defendants and the Hon. Gretchen Walsh, J.S.C.   Contrary to Defendants' misleading statement, Judge Walsh <u>never</u> clearly intimated that the case would definitely be transferred to Westchester County, during that telephone conference.  Plaintiffs  discontinued the case in State Court and commenced this action in Federal Court, as it is the more appropriate venue for this case. (ECF 12) Federal Court has diversity jurisdiction over the case and personal and subject matter jurisdiction over all of the parties.

Plaintiffs filed two amendments to their complaint.  Contrary to Defendants contentions there are no fatal defects to the complaint.  A fatal defect is a defect that would "kill" or squash the complaint in its

4

entirety, this is not the case here.   On August 22, 2018, Plaintiffs were granted leave to file their third amended complaint.  [ECF 58]  Plaintiffs did not file the complaint until September 20, 2018, as Plaintiffs Attorney was in Greece due to the death of two close family members.  [ECF 62] Plaintiffs also made a motion to amend their complaint again, however the court denied this request, pending Defendants' responses.   [ECF 65] Defendants contend that Plaintiffs did not file the appropriate complaint on September 20, 2018.  Defendants' contentions are once again erroneous.

Plaintiffs had requested of the Court to amend their complaint to add Defendants Gruposedei, Tecnisea, Guardian Navigation and to correct the capacity issue of Helen Meimaris suing as legal representative and Executrix of the Estate of Alkiviades Meimaris.  This is precisely what Plaintiffs did, they corrected Helen Meimaris' capacity and added the three Defendants.  Plaintiffs added no new causes of actions.  They simply added the Defendants to the Complaint.  Defendants are grossly incorrect in stating that ECF 62 should be treated as a nullity.

## ARGUMENT

### I.   General Legal Standards

In judging the sufficiency of a complaint  under  Federal R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Ortiz v. Corvetta, 867 F.2d. 146,149 (2d Cir. 1989) A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); see also Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir.1991), cert. denied, ___ U.S. ___, 112 S. Ct. 1943, 118 L. Ed. 2d 548 (1992). The consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir.1993).

Under Section 3016(b) of the New York Civil Practice Laws and Rules ("C.P.L.R.") "a cause of action for breach of fiduciary duty must be plead with particularity."  Further, where a Plaintiff sounds

breach of fiduciary duty action on fraud, Plaintiff must adequately plead the elements of fraud.  1) a false representation made as a statement of fact; (2) that was untrue and known to be untrue by the party making it; (3) made to the induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Datto Inc. v. Braband, 856 F. Supp. 2d 354, 360 (D. Conn 2012*). In *Kermanshah v. Kermanshah, 580 F. Supp. 2d 247 (S.D.N.Y. 2008)* where a breach of fiduciary duty is premised on fraud, the court may also look into false representations or material omissions. *Henneberry v. Sumitomo Corp. of Am., 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007)*. Conduct may be considered fraud where a "*debtor engaged in actual fraud when it stole the plan's mail order business. Cost Controls v. Am. Preferred Prescription (In re Am. Preferred Prescription), 1997 Bankr. LEXIS 387, at \*64 (Bankr. E.D.N.Y. Mar. 21, 1997, Chapter 11, Case No.* 893-84170-478 *(FGC), Adv. Pro. No.* 895-8419-346 *(FGC).*   In this case Defendants Messrs. Royce and Blatte, committed all elements of fraud and breach of fiduciary form duty based on fraud and as such, they are liable for these prima facie torts.

In this case, all of the claims enable the Court to draw reasonable inferences that the Defendants are liable for their wrongdoings.  Plaintiffs can prove the facts of these wrongdoings.  Defendants were in control of TBSI, TBSCG, TBS and all of their affiliates.   These Defendants owed a fiduciary duty to Captain Meimaris, as business partners and as major shareholders of TBSI and TBSCG.   Among other things, these Defendants mandated Captain Meimaris not to sell his TBSI shares.  Captain Meimaris had a 10% ownership in TBSCG, which could not just disappear into thin air and be lost.  TBSG was an integral part of the reorganization of TBSI, in fact it was a condition precedent to the restructuring of the TBS Companies.  [ECF 77-2 at 22]. These Defendants tried to have Captain Meimaris sign a document giving them his shares and when he refused in front of witnesses, they surreptitiously stole his shares using the, as part of the reorganization to support their 10% ownership in the newly organized TBS.   These Defendants pushed Captain Meimaris out of the bank reorganization deal.  He was a founder of TBSI and should have automatically been a participant in the deal.  These Defendants instructed Jaime Leroux to make Captain Meimaris' shareholding's in TBS Ecuador disappear.   The list goes on and on of the wrongdoings of these Defendants, Messrs. Royce and Blatte.  The Plaintiffs can prove many sets of facts

6

to support their claims and entitle them to relief.  Further, the Court may take Judicial notice of the dying declaration affidavit of Captain Meimaris attached hereto, as well as the documents indicating Captain Meimaris' shareholdings in TBSI and TBSCG.  This complaint is sufficient and all of the factual allegations contained herein should be construed in Plaintiffs favor.  If the Court deems it is necessary, Plaintiff can amend their complaint.  The Southern District typically grants plaintiffs leave to amend their complaints to cure defects. *Adams v. NY State Educ. Dept., 752 F. Supp. 2d 420, 455, n.39 (S.D.N.Y. 2010); Hellenic Lines, Ltd. v O'Hearn, 523 F. Supp. 244, 247 (S.D.N.Y. 1981); Oji v. Yonkers Police Dept., 2013 U.S. Dist. LEXIS 136785, at \*1 (S.D.N.Y. May 24, 2013); Strax v. Commodity Exch., Inc., 524 F. Supp. 936, 937 (S.D.N..Y 1981); Santos v. City of NY, 2012 U.S. Dist. LEXIS 21582, at \*3 (S.D.N.Y. Feb. 21, 2012); Klein v. Hongkong & Shanghai Hotels, Ltd., 2007 U.S. Dist. LEXIS 27340, at \*7-8 (S.D.N.Y. Apr. 9, 2007).*

Finally, these claims are not time barred and there are no statute of limitations issues.   In most instances Plaintiffs are within the regular statute of limitations for each cause of action, in all instances they are within the statute of limitations of the the continuous wrong doctrine.   These wrongdoings began as far back as 2008 and ended only recently, with the sale and dissolution of TBSCG companies.   The Bankruptcy case was concluded on  June 29, 2012.

The motion to dismiss has no legal or factual basis and should be denied for all of the reasons set forth herein and discovery should be compelled.

## II.   Plaintiff Helen Meimaris does have standing to sue as an Individual

The Court has subject matter jurisdiction over Helen Meimaris.   Article III of the U.S. Constitution  confers on federal courts  the jurisdiction to resolve "cases" and "controversies".  U.S. Const. art. III §2, *Mahon v. Ticor Title Ins. Co., 683 F3rd 59,62 (2d Cir. 2012).*  In order to have standing a plaintiff must demonstrate: (1) a personal injury in fact,   (2) that the challenged conduct of the Defendant caused and (3) which a favorable decision will likely redress.  *Id.*  In this case, Plaintiff, Helen Meimaris suffered pecuniary and emotional injury at the hands of these Defendants.   These Defendants stole her husbands livelihood.  Plaintiff and her husband were partners in every sense of the word.  They held bank accounts jointly, they held all of their real property jointly and there business' and various

7

companies jointly.  They had reciprocal wills leaving all of their interests not to their children, but to the surviving spouse, each other.  As such, they were not only partners in life, but business partners.  They even moved to Brazil together for a period of about 2 years when Captain Meimaris worked for TBSI, as he and the other founders decided that TBSI needed a company opened in Brazil.

The various illegal acts and wrongdoings of the Defendants, herein discussed, caused Mrs. Meimaris' injuries.  Such as the stealing of shares in TBSCG, the usurping of the Ecuadorian business opportunity, the mandate to Captain Meimaris not to sell his shares in TBSI , the list goes on and on. The Defendants conduct  not only caused Mrs. Meimaris to lose a substantial amount of money, but also, their conduct caused her emotional harm, as she watched her beloved husband, suffer at the hands of the Defendants.  Rather than have peace at the time before his death, Captain Meimaris ruminated over the thievery of his interests by these Defendants and what this meant for his family, whom he worked all his life to provide for.   He did not die without regrets.  This was heartbreaking for all of his family, especially his wife.   They had worked side by side together building a life and establishing a legacy for their children and grandchildren.  Now it was all gone. As a beneficiary under Captain Meimaris' will, Helen Meimaris has standing to sue.  A favorable decision for Mrs. Meimaris could  redress the pecuniary losses she suffered and it would redress her emotional suffering. Therefore, this claim should not be dismissed.

**III.**    **CLAIM ONE SHOULD NOT BE DISMISSED**

**a.**    **Claim One is Not Time Barred**

Messrs. Royce and Blatte fraudulently induced Captain Meimaris to not invest in the real estate project in Ecuador, namely warehouses and real property for the warehouses. Not only did they make fraudulent statements to prevent him from investing in the property, saying that it was a conflict of interest, but they <u>mandated</u> that he not invest because of that reason.  Messrs. Royce and Blatte, then invested themselves in this venture.   Their statements were not only fraudulent but a direct command. Mr. Royce, as CEO and Mr. Blatte, as senior executive vice-president had the authority to make such commands by virtue of their positions, therefore Captain Meimaris relied on their authority and on their statements.

This claim falls under the continuous wrongdoing doctrine as such, Plaintiffs are  within the

statute of limitations period.  Under the "continuous wrong doctrine" the limitations period is tolled to the commission of the last wrongful act. *Nuss v. Salad, 2016 U.S. Dist. LEXIS 98529, at \*28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279.*  In New York, the Courts have applied this doctrine to cases of fraud. *Tiberiv v. CIGNA Corp. 89 F3rd 1423 (10th Cir 1996), Merine ex. Rel.-Bache Util. Fund v. Prudential-Bache Util. Fund.m859 F.Supp 715, 725 (S.D.N.Y. 1994).   Affordable Hous. Assoc., Inc. v. Town of Brookhaven, 150 A.D.3d 800 (2d Dep't 2017).*  The Second Department has held it applicable in fraud cases. *Lucchesi v. Perfetto, 72 A.D.3d 909, 910 (2d Dep't 2010); Sullivan v. Keyspan Corp., 155 A.D.3d 804, 807 (2d Dep't 2017) and Izzo v. Town of Smithtown, 151 A.D.3d 1035, 1035 (2d Dep't 2017).*

Defendants began their scheme of fraud in 2008, when they prevented Captain Meimaris from selling his shares in TBSI.  The last wrongful act could either be construed as the date the Bankruptcy case was concluded, June 29, 2012 or as recent as this year with the closing of the TBSG companies.

Under the continuous wrong doctrine, Plaintiffs are well within the statute of limitations period and as such, Claim One should not be dismissed as untimely.  Finally, the question of when the statute tolls is a question of a triable issue of fact which is raised by the Plaintiff for the jury to determine.  *3rd & 6th, LLC v. Berg, 149 AD3d 794, 795-796 (2d Dep't 2017); McDermott v. Torre, 82 A.D.2d 152, 153 (1st Dep't 1981), Demchik v. Gen. Motors Corp., 821 F2d 102, 106 (2d Cir. 1987)* .  In so being, the jury should decide the issue of the tolling of the statute of limitations. Accordingly, this claim should not be dismissed.

**b.    The TAC  Does Not Fail to Plead the Elements of Breach of Fiduciary Duty & Fraud**

Under Section 3016(b) of the New York Civil Practice Laws and Rules ("C.P.L.R.") "a cause of action for breach of fiduciary duty must be plead with particularity."  Further, where a Plaintiff sounds breach of fiduciary duty action on fraud, Plaintiff must adequately plead the elements of fraud.   In Plaintiffs TAC, Plaintiffs state that Messrs. Royce and Blatte both owed Captain Meimaris a fiduciary duty as they were his business partners and Mr. Royce also owed him that duty as a majority shareholder.  [EC 62 at 11].  Further, in Plaintiffs TAC, Plaintiffs more than adequately pleaded all of the elements of fraud such that Messrs. Royce and Blatte knowingly made false representations to Captain Meimaris with the intent to deceive him and have him justifiably rely on those statements so that he would ultimately not

question them about investing in the Ecuadorian business opportunity.  The told him that he "could not invest as there was a conflict of interest."  Captain Meimaris believed them because they were operating the company and had superior knowledge than he did at that point, as he had retired in 2006.  He  relied on their mandate to  his detriment, resulting in injury to him.  These Defendants committed statutory fraud, common law fraud and violated §349 of the Deceptive Practices Act under General Business law.  Further, Defendants contend that Captain Meimaris was a "savvy and successful" business man." [ECF 71 at 15] This is correct.  However, during the period of about 2008-2012 he suffered from a debilitating disease which is nicknamed the "suicide disease".  He had trigeminal neuralgia. This disease had him hospitalized at least twice from pain so debilitating that he was unable to function unless he took heavy pain medication.  Such medication that would alter his ability to function normally.  Defendants knew about this condition and they took advantage of the fact that he was under treatment for trigeminal neuralgia.  At that time, in Captain Meimaris' condition, he refused to take heavy medication despite his pain.  Further, the Defendants did not just make a statement about a conflict of interest, they mandated that Captain Meimaris not invest in this deal.  Captain Meimaris eventually underwent several procedures so that no medication was now necessary for this condition.

Their actions even amount to elder abuse, as they took financial advantage of him.  As such, they also violated the  Federal Elder Justice Act, which defines financial exploitation of the elderly as "the fraudulent or otherwise illegal, unauthorized, or improper act..that uses the resources of an elder for monetary or personal benefit, profit or gain...that results in depriving the elder the rightful access to, or use of, benefits, resources, belongings or assets."  Even, if Captain Meimaris was not sick at that time or elderly,  Defendants actions, as the Plaintiffs prove in their TAC and herein amounted to breach of  Fiduciary duty and Fraud.   Further, under the "corporate opportunity" doctrine, the *theft of a business opportunity by a corporate director is actionable under New York Law." You Han Young v. Chiu, 49 A.D. 3d 535 (N.Y. App. Div. 2d Dep't 2008)*.  The Supreme Court found that  Plaintiffs business partners were liable for excluding him from joining in a new profitable business venture and that they breached their fiduciary duty owed to him as business partners.  *Appell v. L.A.G. Corp. 2008 N.Y. Slip Op. 31988,*

*Drucker v. Mige Assoc. 11, 22 AD2d 427, 428 (1996)* the foregoing reasons, this claim should not be dismissed as these business partners usurped this opportunity from Captain Meimaris.

## IV.   CLAIM TWO SHOULD NOT BE DISMISSED

Claim two asserts that Messrs. Royce and Blatte fraudulently mandated that Captain not sell a large amount of his shares in TBSI because it would not look good to the public and then the Defendants turned around and sold over $70,000,000 worth of shares themselves during the same.   Contrary to Defendants' contentions claim two is cognizable under New York Law and this claim should not be dismissed.

### a.   Claim Two is Not Time Barred

This claim falls under the continuous wrongdoing doctrine, as such, Plaintiffs are within the statute of limitations period.  Under the "continuous wrong doctrine" the limitations period is tolled to the commission of the last wrongful act. *Nuss v. Salad, 2016 U.S. Dist. LEXIS 98529, at \*28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279.*  In New York, the Courts have applied this doctrine to cases of fraud. *Tiberiv. CIGNA Corp.89 F3rd 1423 (10th Cir 1996), Merine ex. Rel.-Bache Util. Fund v. Prudential-Bache Util. Fund.m859 F.Supp 715, 725 (S.D.N.Y. 1994).   Affordable Hous. Assoc., Inc. v. Town of Brookhaven, 150 A.D.3d 800 (2d Dep't 2017).*  The Second Department has held it applicable in fraud cases. *Lucchesi v. Perfetto, 72 A.D.3d 909, 910 (2d Dep't 2010); Sullivan v. Keyspan Corp., 155 A.D.3d 804, 807 (2d Dep't 2017) and Izzo v. Town of Smithtown, 151 A.D.3d 1035, 1035 (2d Dep't 2017).* Defendants began their scheme of fraud in 2008, when they prevented Captain Meimaris from selling his shares in TBSI.  The last wrongful act could either be construed as the date the Bankruptcy case was concluded, June 29, 2012 or as recent as this year with the closing of the TBSG companies.

Under the continuous wrong doctrine, Plaintiffs are well within the statute of limitations period and as such, Claim Two should not be dismissed as untimely.  Finally, the question of when the statute tolls is a question of a triable issue of fact which is raised by the Plaintiff for the jury to determine. *3rd & 6th, LLC v. Berg, 149 AD3d 794, 795-796 (2d Dep't 2017); McDermott v. Torre, 82 A.D.2d 152, 153 (1st Dep't 1981), Demchik v. Gen. Motors Corp., 821 F2d 102, 106 (2d Cir. 1987).*  In so being, the

11

jury should decide the issue of the tolling of the statute of limitations.  Accordingly, this claim should not be dismissed.

**b.**     **Claim Two is Cognizble under New York Law**

In this matter Plaintiffs were fraudulently prohibited from selling their stock in TBSI.  Defendants mandated that they did not sell.  Defendants stated to Plaintiffs that it would not look good to the public as the company was considering a secondary offering.  (*See* Meimaris Aff. Exs. 1,2) Defendants only told Plaintiffs not to sell, so that they could sell over $70,000,000.00 worth of their shares.  Plaintiffs lost close to $51,000,000.   On the insider trading log, the only founder not selling shares in May 2008 is Captain Meimaris.  (*See* Meimaris' Aff. Ex. 1,4*).*

Defendants contentions are incorrect that this claim is not cognizable under New York Law.   A plaintiff alleging fraud is entitled to recover pecuniary loss suffered as a result of the misrepresentation. *Continental Cas. Co. V. Pricewaterhousecoopers LLP, 15 N.Y.3d 266 (2010)* Damages recoverable under the "out of pocket" rule are intended to compensate Plaintiffs from what they lost because of the fraud. *Lama Holding 88 N.Y/2d at 421, Clearview Corp. v Gheradi, 88 A.D.2d 461,468 (2d Dept 1982).*  "Out of pocket considerations do not..prevent recovery of other consequential damages proximate caused by reliance on the misrepresentation. *Clearview 88 A.D.2d at468.*   When the misrepresentation is willful, wanton or malicious, a Plaintiff is entitled to recover punitive damages. *Chase Manhattan v. Perk 65 A.D. 2d 207,211 (4th Dept 1978).*   Under existing law, Plaintiffs are entitled not only to damages  but also punitive damages as the fraud perpetrated by Defendants was willful, wanton and malicious. Accordingly, this claim should not be dismissed.  Further, Defendants' contentions that New York does not recognize "holder claims" is patently incorrect. In *Glaubach v. PricewaterhouseCoopers, LLP, 2018 N.Y. Slip. Op 30875(U), *12 (Sup. Ct., NY County 2018); Citigroup Inc. v. AHW Inv. Partnership (140 A3d 1125 (Del 2016)* a plaintiff, who did not sell her shares in reliance on the corporation's misrepresentations, had a holder claim against the corporation.  It is well settled law that if you can establish that the plaintiff is not seeking  "hypothetical lost profits" and  that plaintiff "suffered a definite, measurable, out-of-pocket loss — the loss of the value of [shares] and interest due thereunder" - due to the alleged false representations of defendant, plaintiff will survive a motion to dismiss on that issue.  *Universal Inv. Advisory SA v. Bakrie*

12

*Telecom PTE, Ltd., 51 Misc. 3d 1212(A), 2016 N.Y. Slip Op 50631[U], \*7 (Sup Ct., NY County 2016 at\*7-8)*. In its decision in *AHW Inv. Partnership v. CitiGroup Inc., 980 F. Supp. 2d 510, 521 (S.D.N..Y 2013),* the court stated that a plaintiff alleging a holder claim needs to *"allege a special relationship, that was necessary for a negligent misrepresentation claim and…cognizable damages proximately caused by the fraud to support their fraud claim." Id. at 520.* In this case, the losses suffered by the Plaintiff are not hypothetical they are approximately $51,000,000.00 plus interest, because in May 2008, TBSI shares were $51.00 per share. There was a special relationship, the Plaintiffs and Defendants were business partners and the damages were proximately caused by the fraud which the Defendants perpetrated on the Plaintiffs. Defendants again are altering the facts, Plaintiffs never alleged that the proximate causes of their damages were bad decisions and mismanagement by Defendants. Plaintiffs concretely allege that the proximate cause of their damage was the mandate not to sell their shares in May 2008. [ECF 62 at par. 81-83] For the foregoing reasons Claim Two should not be dismissed as these Defendants mandated and prevented Captain Meimaris from selling his shares in TBSI.

c.     __The TAC Pleads all of the Elements of Fraud__

Defendants purposely misstate the facts from Plaintiffs TAC. Plaintiff was told he could <u>not</u> sell his shares because it would look bad to the public. This was not an expression of "opinion", this was a mandate by Defendants. In an email from Plaintiffs daughter to Defendant Blatte, dated August 2008, Plaintiffs daughter mentions the fact that Captain Meimaris was told he could not sell his shares a "few months ago". (*See* Meimaris Aff. Ex. 1,2) Those few months meant May 2008. Defendants drone on and on about "expectations" "speculation" etc. This has nothing to do with speculations and expectations. All Plaintiffs wanted to do in May 2008, was exactly what Defendants did, sell their shares at $51 per share. Interestingly, Defendants in a deliberate self serving manner state that "common sense dictates that if a major shareholder is selling...the market could react negatively". If this is the case, then why was the CEO and Senior Executive Vice President of TBSI selling huge amounts of stock in May of 2008? (*See* Meimaris Aff. 1,4)

Plaintiff proved all's of the elements of fraud, a false statement, "the mandate not to sell", made by these Defendants, who knew the statement was false, as they were selling their shares, which Plaintiff

justifiably relied on, to his detriment causing him pecuniary loss and injury.  Accordingly, this claim should not be dismissed as these Defendants mandated and prevented Captain Meimaris from selling his shares in TBSI.

### V.     CLAIM THREE SHOULD NOT BE DISMISSED

The third cause of action asserts that Mr. Royce told Captain Meimaris that he did not need to participate in the reorganization plan and that he did not need to put money in, as his interests were protected. [ECF 62 par. 92-99]. Claim Three is neither time barred nor is it a collateral attack on the Bankruptcy Court Reorganization Plan.   Therefore this claim should not be dismissed as Defendants prevented Captain Meimaris from being part of the Bankruptcy Reorganization Deal and Defendants'.

#### a.     Claim Three is not Time Barred

Claim Three is not time barred.  This is incorrect.  The Bankruptcy case closed on June 29, 2012, it did not close on the date on February 12, 2012.  (*See* Alkistis Meimaris Aff. Exhibit 8).  This action was initiated on May 21, 2018.   This claim also falls under the continuous wrongdoing doctrine, as such, Plaintiffs are   within the statute of limitations period.   Under the "continuous wrong doctrine" the limitations period is tolled to the commission of the last wrongful act.   *Nuss v. Salad, 2016 U.S. Dist. LEXIS 98529, at \*28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279.*   In New York, the Courts have applied this doctrine to cases of fraud.  *Tiberi v. CIGNA Corp.89 F3rd 1423 (10th Cir 1996), Merine ex. Rel.-Util. Fund v. Prudential-Bache Util. Fund.m859 F.Supp 715, 725 (S.D.N.Y. 1994).   Affordable Hous. Assoc., Inc. v. Town of Brookhaven, 150 A.D.3d 800 (2d Dep't 2017).* The Second Department has held it applicable in fraud cases. *Lucchesi v. Perfetto, 72 A.D.3d 909, 910 (2d Dep't 2010); Sullivan v. Keyspan Corp., 155 A.D.3d 804, 807 (2d Dep't 2017) and Izzo v. Town of Smithtown, 151 A.D.3d 1035, 1035 (2d Dep't 2017).*

Under the "continuous wrong doctrine" the limitations period is tolled to the commission of the last wrongful act.  Defendants began their scheme of fraud in 2008, when they prevented and mandated Captain Meimaris not to sell his shares in TBSI.  The last wrongful act could either be construed as the date the Bankruptcy case was concluded, June 29, 2012 or as recent as this year with the closing of the TBSG companies. Finally, the question of when the statute tolls is a question of a triable issue of fact

14

which is raised by the Plaintiff for the jury to determine.  *3rd & 6th, LLC v. Berg, 149 AD3d 794, 795-796 (2d Dep't 2017); McDermott v. Torre, 82 A.D.2d 152, 153 (1st Dep't 1981), Demchik v. Gen. Motors Corp., 821 F2d 102, 106 (2d Cir. 1987)* In so being, the jury should decide the issue of the tolling of the statute of limitations.  For the foregoing reasons, this claim should not be dismissed.

### b.    <u>Claim Three is not a Collateral Attack on the Bankruptcy Court's Order</u>

No where in Plaintiffs TAC, do Plaintiffs collaterally attack the Bankruptcy Court's Order, or even allude to attacking the Order or appealing the Order.  Defendants are using their smoke screen and mirror tactics once again.   Plaintiffs merely contend that they were fraudulently pushed out of the Reorganization deal by the Defendants and that this caused them injury, as Plaintiffs were left with no interest in the new Company TBS.  As a founder of TBSI, Captain Meimaris surely should have been offered an interest in the new company, not fraudulently pushed out by his business partners. (*See* Meimaris Aff. Exs. 1,3 )  Mr. Royce's statements were false, material, and deliberately made and caused Captain Meimaris injury.

Plaintiffs actually support the Plan.  The  Bankruptcy Plan supports Plaintiffs claims as "general unsecured claim holders".   Because this was a "prepackaged" bankruptcy reorganization, which was resolved in a record 43 days, a "NO BAR DATE" was ever established for the filing of claims against the Debtor; indeed very limited notice was sent to creditors whose claims were not being affected by the Plan. Claims of General Unsecured Creditors, which would include the claim of the Plaintiffs, under section 4.8 of the Plan were unimpaired in the bankruptcy – meaning that they would be paid 100% when and if the claim became allowed.  [ECF No. 70-1 at pg 45 C(11)(Ii)] Further, A plan of reorganization is essentially a new contract between the creditor and the Debtor.   The discharge injunction prevents creditors from seeking to collect/enforce their debt in a manner that is inconsistent with the Plan. Here, because the Plan provided for full payment of claims, the discharge/injunction does NOT prevent the Plaintiffs from seeking to liquidate and enforce their  claims.   In no manner, do Plaintiffs collaterally attack the Bankruptcy Order nor want the order appealed.   These Defendants need to be accountable for excluding Captain Meimaris from this corporate opportunity.  In New York, under the "corporate

opportunity" doctrine, the *theft of a business opportunity by a corporate director is actionable under New York Law." You Han Young v. Chiu, 49 A.D.3d 535 (N.Y. App. Div. 2d Dep't 2008)*. The Supreme Court has found that Plaintiffs business partners were liable for excluding him from joining in a new profitable business venture and that they breached their fiduciary duty owed to him as business partners for excluding him.  *Appell v. L.A.G. Corp. 2008 N.Y. Slip Op. 31988, Drucker v. Mige Assoc. 11, 22 AD2d 427, 428 (1996)*  For the foregoing reasons, this claim should not be dismissed as these business partners usurped this opportunity from Captain Meimaris.

## VI.    CLAIM FOUR SHOULD NOT BE DISMISSED

Claim Four asserts that Defendants' fraudulently tried to convince Captain Meimaris to hand over his 10% ownership in TBSCG,  then actually stole his interests in TBSCG and used these interests in the Bankruptcy of TBSI, as use of TBSCG  was a condition precedent to the Bankruptcy.  This claim should not be dismissed because it is not time barred and Plaintiffs proved all of the elements of Fraud.

### a.    Claim Four is not Time Barred

Defendants used TBSCG in the Bankruptcy proceeding.  The Bankruptcy proceeding concluded on June 29, 2012.  (*See*  Meimaris Aff. Ex. 8) This case commenced May 21, 2018.  Under N.Y.C.P.L.R. §213 (8) the statute of limitations for fraud is the "greater" of six years from when the fraud occurred or two years from when the Plaintiffs discovered it.  In this case, The fraud commenced in 2012.  The tolling of the statute could be either June 29, 2012, when the Bankruptcy case closed, or as recent as this year with the closing of some of TBSCG's companies.  Plaintiffs are within the statute of limitations.  If the date the Defendants actually used TBSCG for the Bankruptcy is used, Plaintiffs again are within the limitations period under the continuous wrong doctrine.   If this claim falls under the continuous wrongdoing doctrine, as such, Plaintiffs are   also within the statute of limitations period.   Under the "continuous wrong doctrine" the limitations period is tolled to the commission of the last wrongful act. Nuss v. Salad, 2016 U.S. Dist. LEXIS 98529, at *28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279.  In New York, the Courts have applied this doctrine to cases of fraud.  Tiberiv. CIGNA Corp.89 F3rd 1423 (10th Cir 1996), Merine ex. Rel.-Util. Fund v. Prudential-Bache Util. Fund.m859 F.Supp 715, 725 (S.D.N.Y. 1994).  Affordable Hous. Assoc., Inc. v. Town of Brookhaven, 150 A.D.3d 800 (2d Dep't

2017). The Second Department has held it applicable in fraud cases. Lucchesi v. Perfetto, 72 A.D.3d 909, 910 (2d Dep't 2010); Sullivan v. Keyspan Corp., 155 A.D.3d 804, 807 (2d Dep't 2017) and Izzo v. Town of Smithtown, 151 A.D.3d 1035, 1035 (2d Dep't 2017).

Defendants began their scheme of fraud in 2008, when they prevented Captain Meimaris from selling his shares in TBSI.  The last wrongful act could either be construed as the date the Bankruptcy case was concluded, June 29, 2012 or as recent as this year with the closing of the TBSG companies. Finally, the question of when the statute tolls is a question of a triable issue of fact which is raised by the Plaintiff for the jury to determine.   3rd & 6th, LLC v. Berg, 149 AD3d 794, 795-796 (2d Dep't 2017); McDermott v. Torre, 82 A.D.2d 152, 153 (1st Dep't 1981), Demchik v. Gen. Motors Corp., 821 F2d 102, 106 (2d Cir. 1987). In so being, the jury should decide the issue of the tolling of the statute of limitations. For the foregoing reasons, this claim should not be dismissed as these Defendants stole his 10% ownership in TBSCG.

**b.**      **The TAC Pleads all of the Elements of Fraud**

Defendants are once again using pedantic tactics to take the onus off of these Defendants for their fraudulent actions.  Contrary to Defendants' contentions, Plaintiffs never tried to impose fraud liability on Defendants for communications they made with the Banks.  Plaintiffs were merely stating the extent of the horrific actions of Defendants.  That is, not only were the Plaintiffs deceived, but so too were the banks.   Plaintiffs are not trying to fight the battle for the banks, they are fighting this battle for themselves. [ECF 62 at par.104-127].

Plaintiffs had 10% ownership in TBSCG. (*See* Meimaris Aff. Exs. 1,6,7)  10% ownership does not just disappear into thin air,   Someone had to do something to make those shares disappear. The Defendants tried to swindle these shares from Captain Meimaris for the Bankruptcy Reorganization and their own pecuniary gain.  When they could not succeed, they stole his shares and used them for the Bankruptcy.  Plaintiffs never consented to the use of their shares.  They used them without the consent or knowledge of Captain Meimaris.  Defendants gave the banks the impression that they had the right to use TBSCG and had the consent of all shareholders.  This was a knowing material misrepresentation of the truth and resulted in Plaintiffs losing their 10% ownership in TBSCG. Thereby causing Plaintiffs injury.

17

Defendants committed fraud on the Plaintiffs and Plaintiffs properly plead all of the elements of Fraud in their TAC.   In *United States v. Pisani*, 590 F. Supp. 1326 (S.D.N.Y. 1984)   the court denied the Defendants' motion to dismiss and held that a partner holds a fiduciary duty to his co-partners and a partner cannot steal from his partners.  *See Vanacore v. Kennedy*, 86 F. Supp. 2d 42, 50 (D. Conn. 1998**).**

Further, Fraud is not only committed by words, but also by conduct.   In *Cost Controls v. Am. Preferred Prescription, 1997 Bankr. LEXIS 387, at 64 (Bankr. E.D.N.Y. March 21, 1997, Chapter 11, Case No. 893-84170-478*   (FGC), Adv. Pro. No. 895-8419-346   (FGC), the Court dismissed the Defendants motion to dismiss based upon the fraudulent conduct of Defendants.   In that cases, similar to this case, where Defendants stole Plaintiffs shares, Defendants stole Plaintiffs mail order business.  The act of theft amounted to actual fraud.    The stealing of Captain Meimaris' shares amounts to actual fraud. Accordingly, for the foregoing reasons, this claim should not be dismissed as these Defendants stole his 10% ownership in TBSCG.

**VII.   CLAIM FIVE SHOULD NOT BE DISMISSED**

Claim Five asserts that Messrs. Royce and Blatte stole Captain Meimaris' shares in TBS Ecuador. Contrary to Defendants contentions, TBS Ecuador is not a "vaguely identified" Company under TBSCG. Defendants are well aware that TBS Ecuador is a company which is owned 99% by TBSCG.   (*See* Meimaris Aff. Exhibit 5).   This claim is not time barred either. This claim should not be dismissed.

**a.     Claim Five is not Time Barred**

Similar to the other claims, this claim is within the statute of limitations.   In September of 2013, Jaime Leroux, the President of TBS Ecuador met with Captain Meimaris and Mrs. Meimaris.  Mr. Leroux knew that Messrs. Royce and Blatte had stolen the Captains's interests in TBSCG and represented to Captain Meimaris that his shares in TBS Ecuador was safe.  He specifically stated that Messrs. Royce and Blatte would never get these shares.   Captain Meimaris relied on his representations.   This was a false statement.   Mr. Leroux knew this statement to be false because he helped to effectuate the transfer of Captain Meimaris' shares, at the direction of Messrs. Royce and Blatte.   In 2014, when questioned by Mrs. Meimaris, Mr. Leroux told her that the Captains' shares no longer existed.  As previously stated the

statute of limitations for fraud is 6 years. The shares were either transferred in 2013 or 2014. This case commenced in 2018. Therefore, Plaintiffs are well within the limitations period. Also, this is a case of continuous wrong, so that the continuous wrong doctrine applies. Under the "continuous wrong doctrine" the limitations period is tolled to the commission of the last wrongful act Nuss v. Salad, 2016 U.S. Dist. LEXIS 98529, at *28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279. In New York, the Courts have applied this doctrine to cases of fraud. Tiberiv. CIGNA Corp.89 F3rd 1423 (10th Cir 1996), Merine ex. Rel.-Bache Util. Fund v. Prudential-Bache Util. Fund.m859 F.Supp 715, 725 (S.D.N.Y. 1994). Affordable Hous. Assoc., Inc. v. Town of Brookhaven, 150 A.D.3d 800 (2d Dep't 2017). The Second Department has held it applicable in fraud cases. Lucchesi v. Perfetto, 72 A.D.3d 909, 910 (2d Dep't 2010); Sullivan v. Keyspan Corp., 155 A.D.3d 804, 807 (2d Dep't 2017) and Izzo v. Town of Smithtown, 151 A.D.3d 1035, 1035 (2d Dep't 2017).

Finally, the question of when the statute tolls is a question of a triable issue of fact which is raised by the Plaintiff for the jury to determine. 3rd & 6th, LLC v. Berg, 149 AD3d 794, 795-796 (2d Dep't 2017); McDermott v. Torre, 82 A.D.2d 152, 153 (1st Dep't 1981), Demchik v. Gen. Motors Corp., 821 F2d 102, 106 (2d Cir. 1987). In so being, the jury should decide the issue of the tolling of the statute of limitations. For the foregoing reasons, this claim should not be dismissed these Defendants stole Captain Meimaris' shares in TBS Ecuador.

    **b.**   **<u>Claim Five is More than Adequately Plead</u>**

The TAC does not fail to plead a fiduciary relationship. This is a blatant lie. [ESC 62 at 64,98]. The TAC states that these Defendants were partners of the Captain Meimaris and therefore owed him a fiduciary duty. It also states that Mr. Royce owed him a fiduciary duty as a majority shareholder. The facts plead are not conclusory assertions of theft, they are hard facts of theft. Captain Meimaris' interests in TBS Ecuador could not just dissipate into thin air without the directive from the other shareholders in charge, namely Defendants Messrs. Royce and Blatte. They breached their fiduciary duty to Captain Meimaris by stealing his shares in TBS Ecuador. For the foregoing reasons, this claim should not be dismissed.

19

**VIII.    CLAIM SIX SHOULD NOT BE DISMISSED**

**a.    Plaintiffs did Not Assert Conspiracy as an Independant Tort**

Defendants incorrectly allege that Plaintiffs alleged conspiracy as an independent Tort.   This is not the case.   Plaintiffs asserted conspiracy to commit fraud, not conspiracy. It is wishful thinking and delusional to state that none of Plaintiffs claims are viable.   As set forth herein, all of Plaintiffs claims are viable and therefore form the basis for the conspiracy committed by the Defendants.   Plaintiffs have plead conspiracy with particularity. First, Plaintiffs proved that these various  cognizable torts existed.   Second, Plaintiffs plead that there was a corrupt agreement between Messrs. Royce and Blatte and they acted in concert to effectuate the conspiracy.   Third, Plaintiffs also plead all of the overt acts in furtherance of this conspiracy including but not limited to stealing Captain Meimaris shares, usurping a business opportunity, pushing Captain Meimaris out of the Bankruptcy Reorganization Deal and stealing his shares in TBS Ecuador for the purpose of their own greedy selfish pecuniary gain and thereby hurting Captain Meimaris. Financially. (*See* Meimaris Exs. 1-7)

The parties intentionally carried out all that was necessary and effectuated the ruin of Captain Meimaris financially.  All of which resulted in financial damage to Captain Meimaris.   Not only was a conspiracy to commit these tortious acts committed, but the conspiracy lasted from 2008 to the present. In *Nadelson v. Zakharchenko, 2014 NY Slip Op. 32552(U)*    the Court stated that *"the allegation of conspiracy carries no greater burden, but also no less, than to assert adequately common action for a common purpose by common agreement or understanding among a group, from which common responsibility derives. Therefore, under New York law, in order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement."*    In this case these Defendants acted in concert to steal from Captain Meimaris sabotage and take away from Captain Meimaris his TBSCG interests, pecuniary gain from the sale of TBSI, his interests in TBS Ecuador and a business opportunity in Ecuador. For the foregoing reasons, this claim should not be dismissed as a cognizable claim of conspiracy exists.

20

**IX.   THE DEMAND FOR PUNITIVE, EXEMPLARY & SPECIAL DAMAGES &
ATTORNEYS' FEES SHOULD NOT BE DISMISSED**

Defendants are grasping at straws in stating that in a punitive damages claim, the

Plaintiffs do  have to  demonstrate that the harm was directed at the public generally.  This is not

 the law in New York.  Under New York Law, punitive damages are awarded in various circumstances.  A

punitive damages claim must also be supported by proof that the defendants' actions have "the character

of outrage frequently associated with crime." Prozeralik v. Capital Cities Comm'ns, Inc., 82 N.Y.2d 466,

479 (1993).  "Punitive damages are permitted when the defendant's wrongdoing is not simply intentional

but evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a

criminal indifference to civil obligations". (*Ross v Louise Wise Serv., Inc.,* 8 NY3d 478, 489, quoting

*Walker v Sheldon,* 10 NY2d 401, 405 *see Prozeralik v Capital Cities Communications,* 82 NY2d 466,

479; *Sharapata v Town of Islip,* 56 NY2d 332, 335).  In this case, Captain Meimaris was suffering from a

condition called trigeminal neuralgia.  The Defendants knew of this condition.  Mr. Royce had even

visited Captain Meimaris in the hospital when he was hospitalized for this condition.  These Defendants

surpassed all levels of decency and morality when they wantonly defrauded Captain Meimaris.  He was

sick, as well as elderly, and yet they chose that time to begin their conspiracy to defraud him and

financially ruin him.  Such indifference to morality warrants the award of punitive damages and therefore

Plaintiffs should be compensated.  Accordingly, Plaintiffs claim for punitive and exemplary damages

should not be dismissed, they are appropriate in the instance of this case as Defendants' actions wantonly

surpassed all levels of moral decency.

Plaintiff respectfully requests the Court to Amend the Complaint to plead special damages with

particularity.  In light of the foregoing, Plaintiffs' claims for punitive damages/exemplary damages and

special damages should not be dismissed.

**X.     Plaintiffs' claim For Attorneys Fees Should Not Be Dismissed**

Contrary to Defendants contentions, Plaintiffs claim for attorneys fees should not be dismissed as federal

courts do award attorneys fees.  Under Federal Rule 54 (2)(A)  **"**A claim for attorney's fees and related

nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved

at trial as an element of damages." Further, federal courts award of attorney fees is at the discretion of the Court. Defendants' contention that attorneys fees are "not generally available" in the absence of contractual or statutory basis is incorrect. In a common law fraud case, New York courts will award attorney's fees as punitive damages when the defendant's conduct evinces "a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." *Hutchins* v. *Utica Mutual Ins. Co.,* 107 A.D.2d 871 (3d Dep't 1985); *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (1988) (stating that "punitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied (internal citations omitted) -- as it is here on the established findings of defendants' wrongful diversion and squandering of corporate assets, granting of excessive credit, payments of salaries to themselves, and other acts constituting willful, wanton and reckless misconduct"); *Dry Clean Depot, Inc. v Stock*, 1992 U.S. Dist. LEXIS 19786, at *4 (S.D.N.Y. Dec. 28, 1992, 92 Civ. 6603 (MBM)); *Perico, Ltd. v. Ice Cream Indus., Inc.*, 1990 U.S. Dist. LEXIS 1413, at *4-5 (S.D.N.Y. Feb. 9, 1990, No. 87 Civ. 4211 (MBM)) (stating that "a decision as to when fraudulent conduct is so egregious as to merit punishment is a discretionary judgment based on 'considered observation of the defendant's conduct in light of the ordinary morals of the marketplace and on an assessment of whether the punishment is needed and will be an effective deterrent.'"). *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118-1119 (2d Cir. 1986).

The Second Circuit, stat4f "just when fraud, deceit or other wrongdoing becomes so evil and so morally culpable as to call for punishment obviously is a matter of judgment based on considered observation of the defendant's conduct in light of the ordinary morals of the marketplace and on an assessment of whether the punishment is needed and will be effective as a deterrent" affirmed the award of punitive damages to plaintiff against Citibank. While punitive damages are recoverable, it is within the discretion of the trier or fact. *Flaks v. Koegel*, 504 F2d 702, 707 (2d Cir. 1974). Also, the amount of damages cannot be determined without an evidentiary hearing. *Id.*For the foregoing reasons, Plaintiffs claims for punitive and exemplary damages, special damages should not be dismissed."

Our case is a case of among other things common law fraud, In our case, Defendants displayed for many years "wanton, willful reckless misconduct." *Dry Cleaning Depot Inc., Supra.* Their behavior

was egregious and against all sense of decency.  They not only defrauded a business partner for years, they took away his life's work and when that was not enough, they pushed him out of corporate opportunities.  What makes their conduct so egregious was that Captain Meimaris was not only elderly , but he was very ill when they began their scheme of sabotage.  He was defenseless.  These Defendants should not only pay for all that they have done to him, but also should pay the attorney fees of this litigations as punitive damages.  Accordingly, Plaintiffs' claim for Attorneys fees should not be dismissed.

## XI.    DISCOVERY SHOULD NOT BE STAYED

Discovery should not be stayed.  The Defendants do not have substantial grounds for dismissal of all claims, in fact, they have no grounds whatsoever.  Discovery needs to commence to move this case along.  Further, discovery needs to commence so that Plaintiffs can support this opposition more effectively, with substantial evidence of their claims.  It is immaterial whether foreign Defendants have yet to be served.  This has no bearing on the discovery Plaintiffs will seek from these Defendants. Defendants do not want Discovery to commence as they are concerned that Plaintiffs will gain evidentiary evidence which will substantiate their claims.   For these reasons, discovery should be compelled.

## CONCLUSION

What is clear from the foregoing, is that these Defendants should not be allowed to steal from the Plaintiffs.  These Defendants should be made accountable for their actions to the fullest extent of the law, in Court, in front of a Jury.   Thus, the Plaintiffs' Third Amended Complaint should not be dismissed. Moreover, the Court should permit, Plaintiffs respectfully request that they be allowed to amend their complaint to conform with the evidence following discovery.

Based upon the foregoing,   Plaintiffs respectfully request  the Court to deny Defendants' motion dismiss, order that discovery proceed and grant any such other relief the Court may deem appropriate

23

Dated:  New York, NY

October 15, 2018

ALKISTIS G. MEIMARIS, ESQ.

By:      /s/ Alkistis G. Meimaris
         Alkistis G. Meimaris, Esq.
         240 Fifth Avenue, M250
         New York, New York  10001
         Tel. No.: (201) 615-3220
         Fax No.: (201) 886-2810
         alkistism@aol.com

cc:      Counsel of record, via ECF