UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ESTATE OF ALKIVIADES MEIMARIS, et al.,

                                                            18-cv-4363 (GBD) (BCM)

    Plaintiffs,

           -against-

JOSEPH E. ROYCE, et al.,

    Defendants.
------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
# THE THIRD AMENDED COMPLAINT

BLEAKLEY PLATT & SCHMIDT, LLP
Attorneys for Defendants Royce & Blatte
One North Lexington Avenue
White Plains, NY 10601
(914) 949-2700

# Table of Contents

Table of Contents..................................................................................................................i

Table of Authorities.............................................................................................................ii

Preliminary Statement..........................................................................................................1

Argument..............................................................................................................................1

    I.    Plaintiff Helen Meimaris lacks Standing..................................................................1

    II.    Claim One................................................................................................................2

    III.    Claim Two ..............................................................................................................4

    IV.    Claim Three ............................................................................................................5

    V.    Claim Four..............................................................................................................6

    VI.    Claim Five...............................................................................................................7

    VII.    Continuing Wrong Doctrine & Tolling..................................................................8

    VIII.    Plaintiffs Should Not be Given Leave to Amend.................................................10

Conclusion..........................................................................................................................10

# Table of Authorities

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ...................................................................................9

*AHW Inv. P'ship v. CitiGroup Inc.*, 980 F. Supp. 2d 510 (S.D.N.Y. 2013)...................................4

*Alexander & Alexander of New York, Inc. v. Fritzen*, 147 A.D.2d 241 (1st Dep't 1999)..............2

*Aretakis v. Caesars Entm't*, 2018 U.S. Dist. LEXIS 29552 (S.D.N.Y. Feb. 23, 2018) ...............10

*Bonilla v. Smithfield Assocs. LLC*, 2009 U.S. Dist. LEXIS 116233 (S.D.N.Y. Dec. 4, 2009) ....................2

*Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247 (E.D.N.Y. 2016)........................................1

*De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003).............................8

*Doukas v. Ballard*, 972 N.Y.S.2d 143 (N.Y. Sup. Ct. 2013) ..........................................................9

*Gass v. Mamedova-Braz*, 2017 U.S. Dist. LEXIS 132920 (S.D.N.Y. Aug. 18, 2017) ..................1

*Henry v. Bank of Am.*, 147 A.D.3d 599 (1st Dep't 2017) ......................................................... 8, 9

*Ilkowitz v. Durand*, 2018 U.S. Dist. LEXIS 51946 (S.D.N.Y. Mar. 27, 2018)...............................1

*Kingston v. Braun*, 504 N.Y.S.2d 916 (4th Dep't 1986) ................................................................8

*McCoy v. Feinman*, 99 N.Y.2d 295 (N.Y. 2002) ...........................................................................9

*Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817 (N.Y. 2016) ......................................7

*Q China Holdings v. TZG Capital*, 2018 N.Y. Misc. LEXIS 1554 (N.Y. Sup. Ct. 2018) ............4

*TechnoMarine SA v. Giftports*, Inc., 758 F.3d 493 (2d Cir. 2014) ..............................................10

*Varga v. McGraw Hill Fin., Inc.*, 147 A.D.3d 480 (1st Dep't 2017) ..............................................4

**Statutes**

C.P.L.R. § 213..........................................................................................................................2, 4, 7

C.P.L.R. § 214..................................................................................................................................2

N.Y. Gen. Bus. L. § 349..................................................................................................................2

**Preliminary Statement**

This Reply Memorandum of Law is respectfully submitted on behalf of Defendants Royce and Blatte in further support of their motion to dismiss the TAC.[1] Setting aside the numerous pleading deficiencies in the TAC, all of the claims in this case are time-barred. Neither the TAC nor the Captain's newly-introduced Affidavit[2] assert that any of the alleged misconduct by Messrs. Royce or Blatte occurred less than six years ago. In addition, the TAC and the Captain's Affidavit clearly demonstrate that he "discovered" all of the alleged "fraud" well-over five years ago. Thus, whether measured from commission or discovery, all the claims are untimely.

**Argument**

I.  *Plaintiff Helen Meimaris lacks Standing*

Plaintiff Helen Meimaris should be dismissed in her individual capacity because she lacks standing. Plaintiffs argue (but do not allege in the TAC) that she has standing because of her status as a beneficiary under the Captain's will, but that is insufficient as a matter of law. *See Gass v. Mamedova-Braz*, 2017 U.S. Dist. LEXIS 132920, at *18 (S.D.N.Y. Aug. 18, 2017) ("Even if the only beneficiaries of an estate are plaintiffs in an action, these claims still belong exclusively to the estate.").

---

[1] Abbreviations herein have the same meaning assigned to them in our moving Memorandum of Law (ECF No. 71).

[2] The Affirmation of Plaintiffs' counsel contains nine vaguely-identified exhibits, including the Captain's Affidavit. (ECF Nos. 90-1, 90-2, 91-1, 91-2, 92-1, 93-1, 93-2, 94-1, 94-2.) The Court can, of course take judicial notice of the date the Bankruptcy Case was closed. The Court would be well within its discretion, however, to ignore the remaining documents. Indeed, affidavits, emails, correspondence and the contents of websites, are the types of material that courts routinely refuse to consider on a motion to dismiss. *See, e.g., Ilkowitz v. Durand*, 2018 U.S. Dist. LEXIS 51946, at *19 (S.D.N.Y. Mar. 27, 2018) ("both the Adam Ilkowitz affidavit and the March 10, 2015 email clearly constitute material outside of the Complaint" that the court will not consider); *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 266 n.13 (E.D.N.Y. 2016) ("The court declines to consider any purported statements on defendant's website that were not described in the Amended Complaint on this motion to dismiss."). In any event, as will be set forth throughout this Memorandum, consideration of the extraneous documents would not salvage this case.

II. *Claim One*

Claim One, which alleges that Messrs. Royce and Blatte fraudulently convinced Captain Meimaris that he could not invest in an unidentified Ecuadorian real estate venture because it would be in "conflict" with his interests in TBSI and CG, is untimely. Plaintiffs do not dispute that the alleged usurpation of the Ecuadorian venture occurred in 2011. (TAC ¶¶ 50, 62-67; ECF No. 90-1 ¶ 20.) Accordingly, under either the three-year[3] or six-year limitations period, the claim is untimely. Moreover, the Captain's Affidavit clearly indicates that he discovered the alleged "fraud" by November 30, 2013, at the latest, which is the day his Affidavit was notarized. (ECF No. 90-1 ¶ 20.) Thus, the claim is also untimely under the two-year discovery rule of N.Y. C.P.L.R. § 213(8).

Plaintiffs vaguely argue that a fiduciary relationship existed because Captain Meimaris and Messrs. Royce and Blatte were "business partners" in CG and Mr. Royce was a majority shareholder in TBSI. (ECF No. 79 ("Opp.") at 9; TAC ¶ 64.) Regarding CG, assuming a fiduciary relationship existed, the TAC clearly alleges that the Ecuadorian real estate venture was "unrelated" to CG. (TAC ¶ 63.) Regarding TBSI, and again assuming a fiduciary duty was owed, the TAC does not allege that the Ecuadorian real estate venture should be deemed an asset of TBSI (or any other TBS entity), such that an actionable claim exists. *See, e.g., Alexander & Alexander of New York, Inc. v. Fritzen*, 147 A.D.2d 241, 246 (1st Dep't 1999) ("The doctrine of 'corporate opportunity' provides that corporate fiduciaries and employees cannot, without consent, divert and exploit for their own benefit any opportunity that should be deemed an asset of the corporation.").

---

[3] Plaintiffs did not respond to our argument that the three-year limitations period applies to the breach of fiduciary duty claims in the TAC, and the Court would be well-within its discretion to consider those claims abandoned. *See, e.g., Bonilla v. Smithfield Assocs. LLC*, 2009 U.S. Dist. LEXIS 116233, at *11 (S.D.N.Y. Dec. 4, 2009) (Plaintiff, however, fails to respond to the remaining two arguments regarding Smithfield's liability. Accordingly, plaintiff has effectively abandoned the assault and battery claims against Smithfield and they are dismissed as a matter of law.). Plaintiffs also make a stray allegation in their Opposition that Royce and Blatte violated § 349 of New York's General Business Law, which prohibits deceptive acts or practices in the conduct of any business. This claim, which is not adequately pled in the TAC, would also be untimely because it is subject to the three-year limitations period of N.Y. C.P.L.R. § 214(2).

Plaintiffs effectively ignore our argument that, when the Captain was advised that he would have a "conflict" if he invested in the Ecuadorian real estate, it was a non-actionable statement of opinion. Rather, they argue that Messrs. Royce and Blatte[4] "mandated" that the Captain not invest in the deal, but that does not transform the nature of the alleged statement to one of fact.

Plaintiffs admit that the Captain was a "savvy businessman" who held numerous high-level executive positions at major international shipping organizations. (Opp. at 10; TAC ¶¶ 26-32, 34.) But they nevertheless argue that he justifiably relied upon the alleged assertion that he would have a "conflict" if he invested in the Ecuadorian real estate because "they were operating the company and had superior knowledge," and apparently because he allegedly had trigeminal neuralgia. (Opp. at 10.) Regarding "superior knowledge," it is not pled at all, and is only argued in conclusory fashion in the Opposition[5]. Plaintiffs have not adequately explained, which is their burden, what "superior knowledge" Messrs. Royce and Blatte had, why the Captain could not obtain that information, or how that information was relevant to determine whether a "conflict" existed. The Captain's failure to conduct any inquiry into this sentiment whatsoever was particularly unjustified because he was immediately skeptical of the notion in 2011, as set forth in his own Affidavit. (ECF No. 90-1 ¶ 20: "I told him I did not understand this, as I was retired and there was no conflict."). Concerning the conclusory attorney argument about trigeminal neuralgia, it should be ignored, but in any event, it is irrelevant for a number of reasons. First, although this condition allegedly lasted from 2008-12, the TAC and the Captain's Affidavit clearly asserts that, during a large portion of that period, he was simultaneously travelling half-way around the world to South America for business purposes and

---

[4] It is important to note that the Captain's Affidavit only asserts that *Mr. Royce* told the Captain that there was a conflict, not Mr. Blatte. (ECF No. 90-1 ¶ 20.) This is in stark contradiction to the TAC, which alleges that they both opined that the Captain would have a conflict. (TAC ¶¶ 63-65.)

[5] In inconsistent fashion, the Plaintiffs assert that the Captain was an "insider" and recount his robust evaluations of TBS business dealings in South America (ECF No. 90-1 ¶¶ 17, 19), but argue that he was at some sort of unidentified information disadvantage.

3

conducting detailed analyses of sophisticated international business deals. (TAC ¶¶ 5, 33, 37; ECF No. 90-1 ¶¶ 19-20.) More importantly, however, there is no particularized allegation or argument that causally links the condition to any of the alleged misconduct.

Finally, Plaintiffs do not respond to our argument that they have failed to adequately allege damages from the alleged usurpation of the Ecuadorian real estate venture.

III. *Claim Two*

Claim Two, which alleges that Messrs. Royce and Blatte fraudulently convinced Captain Meimaris to refrain from selling "a lot" of his shares in TBSI when they allegedly told him that "if a major shareholder of the company sold [a lot of] shares it would not look good to the public and jeopardize the company," is untimely. Plaintiffs acknowledge that the alleged "fraud" was committed in May 2008, well-outside the six-year limitations period. (TAC ¶ 81; Opp. at 11.) They also concede that they were on notice by December 2011 that TBSI would be filing for bankruptcy and that the shares were worthless, and that by November 30, 2013, Mr. Royce and others had sold "a very large amount" of their shares in May 2008. (TAC ¶¶ 10, 37, 46; ECF No. 90-1 ¶¶ 17, 26.) Thus, this decade-old claim is also untimely under the two-year discovery rule of C.P.L.R. § 213(8).

But even if this claim was timely brought, which it was not, "holder" claims are not cognizable under New York law. *See Varga v. McGraw Hill Fin., Inc.*, 147 A.D.3d 480 (1st Dep't 2017); *Q China Holdings, Ltd. v. TZG Capital Ltd.*, 2018 N.Y. Misc. LEXIS 1554, at *7-9 (N.Y. Sup. Ct. April 23, 2018). The lone federal case cited by Plaintiffs on this point actually supports dismissal. *See AHW Inv. P'ship v. CitiGroup Inc.*, 980 F. Supp. 2d 510, 525-27 (S.D.N.Y. 2013) (holder claim not cognizable).

To rebut our argument that this claim is based upon a non-actionable statement of opinion, Plaintiffs cite to an email from their counsel to argue that Messrs. Royce and Blatte "mandated" that the Captain not sell "a lot of" his TBSI shares in May 2008. Setting aside the numerous procedural and substantive problems in relying on an email from Plaintiffs' counsel, the email plainly

4

demonstrates, at a minimum, that: (1) the Captain was "*asked*" to delay selling his shares because of the secondary public offering that TBSI was engaged in; and (2) thus, the Captain was *free to sell his shares*. (ECF No. 90-2.) So, it wasn't a "mandate." But even if it was, that simply doesn't convert the sentiment into an actionable misrepresentation of fact.

The TAC and the exhibits relied upon by Plaintiffs demonstrate that the proximate cause of the price drop was alleged bad business decisions made by TBSI and its management, not any statements made by Messrs. Royce or Blatte.[6] (TAC ¶ 37; ECF No. 90-1 ¶ 19.) In any event, common sense dictates, and the August 2008 email exhibit demonstrates, that no one could prevent the Captain from selling his shares. (ECF No. 90-2.) His failure to do so caused the injuries he allegedly sustained.

IV.  *Claim Three*

Claim Three, which alleges that Mr. Royce told Mr. Meimaris that he did not need to participate in the Reorganization Plan to push him out of an unidentified ownership interest in the post-reorganization successor company, is time barred. Plaintiffs cannot and do not dispute that the alleged "fraud" was committed prior to the Bankruptcy proceeding, in 2010-11 (TAC ¶¶ 97, 99; Opp. at 14) and that they were on notice by December 2011 that TBSI would be going through a bankruptcy reorganization and that the "banks would own 90% and 10% would be held by [Messrs. Royce, Blatte and McNelis.]" (TAC ¶ 96; ECF No. 90-1 ¶ 26.) Accordingly, under either the three-year[7] or six-year limitations period, and whether from commission (2010-11) or discovery (2011), this claim is untimely.

Plaintiffs are seeking to attack the Reorganization Plan that the Bankruptcy Court approved, plain and simple. The TAC expressly asserts as much: the "reorganization . . . should be deemed null and void . . . ." (TAC ¶ 123.) Plaintiffs argue that they are not precluded because the Reorganization

---

[6] Of course, this ignores the 2008 financial crisis and its aftermath which, as discussed in the court-approved Reorganization Plan, proximately caused TBSI's financial crisis. (Rodriguez Affirm. Ex. 1 at 106: "The global financial crisis has had, and may continue to have, an impact on the Company's business and financial condition.").

[7] Once again, Plaintiffs did not address our argument that the three-year limitations period applies.

Plan does not bar claims against the debtors. But that is irrelevant because Messrs. Royce and Blatte were not debtors in the Bankruptcy Proceeding.

Regarding fiduciary duty, Plaintiffs do not explain why the Captain, who had retired from TBS in 2006, "surely should have been offered an interest in the new company." (Opp. at 15.) Merely alleging that the Captain owned some shares, that he was a "founder," and that Mr. Royce was a "majority shareholder," does not demonstrate that he had some entitlement to an interest in the new company, or that Royce and Blatte had a duty to protect that interest. The reality was simple. The Captain had been retired since 2006. Royce, Blatte and McNelis, as upper management, ran the day-to-day operations of the company and were central to the reorganization. The Captain was not.

Finally, neither the TAC, the Captain's Affidavit, nor any of the other newly-presented exhibits assert that Mr. Blatte made any misrepresentations regarding Claim Three; and, because the Captain concededly had ample notice of the Reorganization Plan, but took no action to object to it, Mr. Royce's alleged statements cannot be the proximate cause of any damages he allegedly suffered.

V. *Claim Four*

Claim Four, which alleges that Messrs. Royce and Blatte fraudulently used CG as a condition of the Reorganization Plan, without Mr. Meimaris' consent as a ten percent shareholder, causing his interests in the company to disappear, is time barred. Plaintiffs argue that the "fraud" occurred in 2012 in connection with the Bankruptcy Reorganization Plan. Even assuming that is true (which it is not according to the TAC's allegations (TAC ¶¶ 8-10, 45-46, 104-27)) the claim is still time-barred because the Reorganization Plan was confirmed on March 29, 2012 (and effective April 12, 2012), well outside the three-year[8] and six-year limitations periods. Moreover, the Plaintiffs concede that they

---

[8] Notably, in their Opposition, Plaintiffs characterize this claim as one for a fraudulent breach of fiduciary duty. (Opp. at 18.) Thus, the three-year period applies. Moreover, the claim should also be dismissed because the TAC fails to plead a fiduciary relationship.

were aware of this alleged misconduct in the summer of 2013. (TAC ¶ 13.) Accordingly, this claim is also untimely under the two-year discovery rule of C.P.L.R. § 213(8).

Plaintiffs' conclusory assertions aside, neither the TAC, nor the newly-introduced exhibits, demonstrate that Messrs. Royce or Blatte made any material misstatement or omission about CG, upon which the Captain reasonably relied, that amounts to fraud upon the Captain. No credible or particularized allegation of this "fraud" is made. Plaintiffs are reduced to the spurious and vague allegation that Royce and Blatte defrauded the banks in the reorganization process. Regardless, whether Messrs. Royce or Blatte gave the *banks* a misimpression about CG or not, it is simply insufficient to create a cognizable claim of fraud for Captain Meimaris. *See Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (N.Y. 2016).

## VI. *Claim Five*

Claim Five, which alleges that Messrs. Royce and Blatte somehow misappropriated Captain Meimaris' shares in a vaguely identified affiliate company called "TBS Ecuador," is time barred. The TAC plainly alleges that the "fraud" regarding TBS Ecuador occurred sometime[9] in 2012, when *Mr. Leroux* allegedly "requested the documents from Captain Meimaris to use to transfer [his] shares to Defendants." (TAC ¶¶ 129, 136.) The Captain's Affidavit asserts that he learned about the fraud regarding TBS Ecuador by October 2013, at the very latest, when Mr. Leroux told him that the company was being reopened under another name and that the Captain "was out of the new company." (ECF No. 90-1 ¶ 31-32.) Thus, under either the three-year or six-year limitations period, and whether from commission[10] (2012) or discovery (2013), this claim must be dismissed as untimely.

---

[9] Although no month is alleged, Plaintiffs may not avoid dismissal by purposely alleging this critical date in such a vague fashion, and then failing to clarify in response to our motion to dismiss. In any event, the three-year limitations period applies.

[10] In their Opposition, Plaintiffs argue, without support in the TAC or the Captain's Affidavit, that the "shares were transferred in 2013 or 2014." (Opp. at 19.) First, the actual transferring of the shares was not the alleged fraudulent act. But even if it was, the claim is still time-barred under the three-year statute of limitations applicable to this claim, which the Plaintiffs have not addressed.

Plaintiffs have also failed to adequately allege that Messrs. Royce and Blatte owed him a fiduciary duty in relation to TBS Ecuador. In fact, there are absolutely no specific allegations concerning Royce or Blatte vis-à-vis TBS Ecuador in the entire TAC or Captain's Affidavit. Indeed, it seems that this claim was not intended to be asserted against Messrs. Royce and Blatte and should be dismissed insofar as it is asserted against them. Finally, the TAC does not allege in any meaningful way how Captain Meimaris suffered damages in relation to this alleged "fraud."

VII.    *Continuing Wrong Doctrine & Tolling*

Plaintiffs predictably attempt to evade the statute of limitations under the "continuing wrong doctrine." However, the doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs." *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (1st Dep't 2017). The TAC alleges a number of discrete "wrongs" that involve different corporate entities, engaged in different types of business ventures in different continents. These "wrongs" were allegedly perpetrated in differing manners, at different times, by different sets of people. Simply put, they are, at best, discrete and independent torts, which is presumably why the TAC pleads them as separate causes of action. *See De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 267 (S.D.N.Y. 2003) ("While all thirteen of plaintiff's claims allege a type of 'fraud,' there is no plausible continuing common scheme or plan that connected the plaintiff's time-barred allegations with his one timely allegation, other than 'defendants are bad guys.'"). The Plaintiffs simply fail to plead in the TAC or explain in their Opposition how the alleged "wrongs" were continuing in nature, which is their burden. *See Kingston v. Braun*, 504 N.Y.S.2d 916, 917 (4th Dep't 1986).

Additionally, the conduct relied upon by Plaintiffs to invoke the doctrine, when the Clerk of the Court closed the Bankruptcy case on June 29, 2012 and the 2018 "closing of the TBS companies," is not sufficient to invoke the doctrine because it is not "misconduct," nor is it attributable to Messrs.

8

Royce or Blatte. *See Doukas v. Ballard*, 972 N.Y.S.2d 143, 143 (N.Y. Sup. Ct. 2013) (doctrine tolls the limitations period to the date of the commission of the last *wrongful* act). The last "wrongful" act (whether in the TAC or the Captain's Affidavit) related to the claims that was allegedly committed by Mr. Royce was in December if 2011 and for Mr. Blatte it was "sometime" in 2011. So, essentially, Plaintiffs are really arguing that the 2012 closing of the TBS Bankruptcy Case and the 2018 "closing of the TBS companies" were continuing effects of the alleged "wrongs" committed by Messrs. Royce and Blatte in 2011 and earlier. But the doctrine does not apply in such a situation. *See, e.g., Henry*, 147 A.D.3d at 601 ("The doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct."). Nor can the doctrine rest upon any alleged failure of Messrs. Royce or Blatte to act to remedy their alleged "wrongs." *Cf. McCoy v. Feinman*, 99 N.Y.2d 295, 306 (N.Y. 2002) ("our law cannot permit a limitations period to depend on a continuing omission that can go on for decades").

Moreover, "[w]here applicable, the doctrine will save all claims for recovery of damages but only to the extent of wrongs committed within the applicable statute of limitations." *Henry*, 147 A.D.3d at 601. Thus, all of the claims against Messrs. Royce and Blatte are still time-barred (either under the three or six-year statute of limitations period) because the latest date of misconduct alleged as against them allegedly occurred in 2011.

The cases cited by Plaintiffs to support application of the doctrine are easily distinguishable— they deal with "continuing torts," such as nuisance and trespass, which create recurring wrongs that are each viewed a new cause of action with a new statute of limitations.

Finally, "[u]nder New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). Plaintiffs have not argued, let alone adequately alleged, that they were somehow

induced by Messrs. Royce or Blatte from initiating this action.  Moreover, the TAC and the Captain's Affidavit establish that Plaintiffs were aware of all the alleged "wrongs" by 2013, at the latest, but they somehow failed to file this action for another *five* years.  In short, Plaintiffs have utterly failed to show that they acted diligently in prosecuting this action.  Accordingly, tolling is simply inappropriate.  The cases cited by Plaintiffs on this point deal with professional malpractice and are completely inapposite.

VIII.    *Plaintiffs Should Not be Given Leave to Amend*

As discussed, the deficiencies in the TAC cannot be cured.  Indeed, Plaintiffs have already had numerous opportunities to amend the pleadings to state valid claims, filing *seven* pleadings, across two separate courts, but fail to state a viable claim.  Moreover, Plaintiffs have not submitted a proposed Fourth Amended Complaint or otherwise indicated that they have facts that would cure the deficiencies in the TAC. *See e.g., Aretakis v. Caesars Entm't*, 2018 U.S. Dist. LEXIS 29552, at *37 (S.D.N.Y. Feb. 23, 2018).  "A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports*, Inc., 758 F.3d 493, 505 (2d Cir. 2014).  Thus, leave to amend should be denied and the TAC should be dismissed as against Messrs. Royce and Blatte with prejudice.

## Conclusion

Messrs. Royce's and Blatte's motion to dismiss should be granted in full and the Third Amended Complaint should be dismissed, with prejudice.

Dated: White Plains, NY
October 29, 2018

BLEAKLEY PLATT & SCHMIDT, LLP
BY:    /s/Adam Rodriguez
William P. Harrington, Esq.
Adam Rodriguez, Esq.
One North Lexington Avenue
White Plains, NY  10601
Tel. No.: (914) 287-6145
wpharrington@bpslaw.com
arodriguez@bpslaw.com

cc: Counsel of record, via ECF