UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
                                                )
HELEN MEIMARIS AS EXECUTRIX and LEGAL           )
REPRESENTATIVE OF THE ESTATE OF ALKIVIADES      )
MEIMARIS AND HELEN MEIMARIS,                    )        1:18-cv-4363 (GBD)(BCM)
                            Plaintiffs,          )
                                                )
                                                )
            -against-                           )
                                                )
                                                )
JOSEPH E. ROYCE, LAWRENCE A. BLATTE,            )
TULIO PRIETO ,                                  )
TBS Shipping Services Inc., and Guardian Navigation )
Services Inc.,                                  )
                            Defendants.          )
_____X

_____

**PLAINTIFFS' OBJECTIONS**
**TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

**ALKISTIS G. MEIMARIS,ESQ.**
**240 FIFTH AVENUE**
**SUITE M250**
**NEW YORK, NEW YORK 10001**
**(201) 615-3220**
**Alkistism@aol.com**

**<u>Table of Contents</u>**

Introduction......................................................................................................................1

Objections to fact findings, presumptions, misstatements of fact and omissions
Of the Magistrate............................................................................................................1

Objections to Magistrate's Recommendation to dismiss Plaintiffs Fifth cause of action............8

Objections to Magistrate's Recommendation to dismiss Plaintiffs 1st, 2nd, 3rd, 4th, 6th & 7th
causes of actions............................................................................................................10

     First Cause of Action...............................................................................13

     Second Cause of Action............................................................................13

     Third Cause of Action...............................................................................16

     Fourth Cause of Action.............................................................................17

     Sixth and Seventh Causes of Action.............................................................18

Objections to the Magistrate's statement that the TAC does not allege "bad facts" after June
29, 2012......................................................................................................................19

Objections to Magistrate's conclusion that since the claims are not viable and they are time
barred and the continuous wrong doctrine does not save them they should be dismissed under
Rule 12(b)(6)..........................................................................................................19,20

Objections to the Magistrate's Recommendation to not allow Plaintiffs to Amend
their Complaint..............................................................................................................21

Objections to the Magistrate's Conclusion that Helen Meimaris does not have standing to sue
in her individual capacity and should be dismissed under Rule 12(b)(1)...............................22

Conclusion....................................................................................................................24

## *Table of Authorities*

### *Cases*

*3rd & 6th, LLC v. Berg,*
   *149 AD 3D 794, 795-796 (2d Dep't 2017)*.............................................................12,18

*Affordable Hous. Assoc. Inc. v. Town of Brookhaven,*
   *150 A.D. 3d 800 (2d Dep't 2017)*.......................................................................11,17

*AHW Inv. Partnership v. Citigroup*.........................................................................15

*Appell v. L.A.G. Corp,*
   *2008 NY Slip Op. 31988*....................................................................................16

*APWU v. Potter,*
   *343 F.3d 619, 627 (2d Cir 2003)*........................................................................24

*Bell Atl. Corp. V. Twombly,*
   *550 U.S. 544, 570 (2007)*..................................................................................20

*Butler v. Gibbons,*
   *569 N.Y.S.2d 722,723 (App.Div. 1991)*...............................................................11

*Chase Manhattan v. Perk,*
   *65 A.D.2d 207,211 (4th Dep't 1978)*.................................................................14

*Citigroup Inc. v. AHW Inv. Partnership,*
   *140 A3d 11215 (Del 2016)*................................................................................14

*Clearview Corp. v. Gheradi,*
   *88 A.D.2d 461, 468 (2d Dep't 1982)*.................................................................14

*Cleveland v. Caplaw Enter,*
   *448 F.3d 518,521 (2d Cir. 2006)*......................................................................20

*Coleman v. Brokers Xpress, LLC*
   *375 F.App'x 136, 137 (2d Cir. 2010)*..............................................................21,22

*Continental y Cas. Co. v. PricewterhouseCoopers, LLP,*
   *15 N.Y.3d 266 (2010)*......................................................................................14

*Cortes Indus. Inc. v. Sum Holding L.P.,*
   *949 F.2d 42, 48 (2D Cir. 1991)*.........................................................................21

*Demchik v. Gen. Motors Corp.,*
   *821 F2d 102,106*...........................................................................................12,18

*Gluabach v. PricewaterhouseCoopers, LLP,*
    2018 Slip Op. 30875 (U) *12 (Sup. Ct. NY County 2018)................................................ 14

*In Cost Controls v. Am. Preferred Prescription,*
    1997 Bankruptcy. LEXIS 387, at 64 (Bankruptcy E.D.N.Y. March 21 1997, Chapter 11,
    Case No. <u>893-84170-478</u> (FGC), Adv.Pro.No. <u>895-8419-346</u> (FGC)................................9

*Izzo v. Town of Smithtown,*
    151 A.D. 3d 1035 (2d Dep't 2017)..........................................................................11, 17

*Kounitz v. Slaatten,*
    901 F. Supp 22 Case.............................................................................................22

*Lama Holding,*
    89 N.Y.2d at 421.................................................................................................14

*Leaseamerica Corp. V. Eckel,*
    710 F.2d 1470, 1473 (10th Cir. 1983).....................................................................22

*Leonelli v. Pennwalt Corp.,*
    887 F.2d 1195, 1198 (2d Cir. 1989).......................................................................21

*Lunchesi v. Pepetto*
    72 A.D. 3d 909, 910 (2d Dep't 2010)..................................................................11,17

*McDermott v. Torre,*
    82 A.D. 2d 152, 153 (1st Dep't 1981)..................................................................12, 18

*Merine Ex. Real. Util. Fund v. Prudential Bache Util. Fund,*
    859 F. Supp. 715, 725 (S.D.N.Y. 1994)...............................................................11,17

*Myers Indus. Inc v. Schooler Arca Sys., Inc.,*
    No. 14-sv-7051, 2016 WL 1092673 at 8................................................................11

*Nielsen v. Rabin,*
    746 F,3D 58, 62 (2d Cir. 2014).............................................................................20

*Nuss v. Salad,*
    2016 U.S. Dist. LEXIS, 98529, at *28-29
    (N.D.N.Y. July 28, 2016, No 7:10-cv-0279)............................................................11,17

*Ronzani v. Sanofi S.A.,*
    899 F.2d 195,198 (2d Cir. 1990)...........................................................................21

*Ricciuti v. N.Y.C. Tr. Auth.,*
    941 F.2d 119,123 (2D Cir. 1991)...........................................................................21

*Selkirk v. State*,
    671 N.Y.S.2d 824, 825 (App.Div. 1998)..........................................................................11

*Sullivan v. Keyspan Corp.*,
    155 A.D. 3d 804, 807 (2d Dep't 2017)........................................................................11,17

*Tandon v.Captain's Cove Marina of Bridgeport, Inc.*
    752 F.3d 239, 243 (2d Cir. 2014)...............................................................................23,24

*Tiberiv v. Cigna Corp.*,
    89 F.3d 1423 (10th Cir. 1996)....................................................................................11,17

*Universal Inv. Advisory SA v. Barrie Telecom PTE, Ltd.*,
    51 Misc. 3d 1212(A), 2016 N.Y. SLIP OP 5063 (U),
    (SUP. CT., NY COUNTY 2016 AT *7-8) .........................................................................15

*Warth, 42 U.S. at 498,499*.............................................................................................14

*You Han Young v. Choi*,
    49 A.D. 3d 535 (N.Y. App.Div. 2d Dep't2008)..............................................................16

**_Statutes_**

*C.P.L.R. 8 (a)(2)*..............................................................................................................21

*C.P.L.R. 213(1)*................................................................................................................17

*C.P.L.R. 213 (8)*..............................................................................................................11

*C.P.L.R. 214(4)*................................................................................................................17

*F.R.C.P. 12(b)(1)*........................................................................................................22,23,24

*F.R.C.P. 12(b)(6)*.....................................................................................10,20,21,24

*F.R.C.P. 15*.................................................................................................................19,22

*F.R.C.P. 15(a)*..................................................................................................................21

*F.R.C.P. Rule 72 (b)*.......................................................................................................1,24

*Federal Elder Justice Act* ...............................................................................................16

*New York General Business Law Deceptive Practice Act sec.349*...................................16

*U.S.C.S. Sec. 636(b)(1)(C)*............................................................................................1,25

*United States Constitution*.............................................................................................20

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure Rule 72(b) Plaintiffs submit their objections to the proposed findings in the Report and Recommendation ("R&R") of the Magistrate Judge within 14 days after being served with a copy of the recommendations. Further, under section U.S.C. §636(b)(1)(C) the Court must make a de novo determination of those portions of the report to which objections are made. As explained below, Plaintiffs' respectfully request a de novo review of the following:

## I.     The Plaintiffs specifically object to certain fact findings, presumptions, misstatements of the facts and omissions of the Magistrate.

**1.     Plaintiffs object to the Magistrates' contention on page 5 of the R&R that Plaintiffs did not explain how it benefited defendants' Royce and Blatte to have Captain Meimaris refrain from selling his shares and that no dates after May 2008 are mentioned in which Captain Meimaris was prevented from selling the bulk of his shares.**

The Magistrate is incorrect, the Third Amended Complaint "TAC" clearly states that each time Captain Meimaris went to sell his shares he was told that he either could not sell his shares at that time or that he could not sell a bulk of his shares. [Docket No. 62 TAC par.79-81]. Further, the TAC clearly states in paragraphs 85-86 how Defendants Royce and Blatte benefited from Captain Meimaris not selling his shares. Defendants did not want the market flooded with founder shares as it would look bad to the public, and they wanted to sell a bulk of their own shares. Therefore, they had to prevent Captain Meimaris from doing the same. Specifically, in May of 2008 they told him he could not sell off most of his shareholdings, yet they themselves collectively sold over 1.5 million TBSI shares. Plaintiffs do not mention any dates after May 2008 as Captain Meimaris was mandated in 2008 that he could not thereafter sell off his shares. [Docket No. 62 TAC par.79-83]  Therefore the Magistrate's contentions are incorrect.

1

2.      **Plaintiffs object to the Magistrates stating that there is no description of the deal to invest in Ecuador with the exception of purchasing property or buildings in Ecuador and that the Plaintiffs allege no facts to support Plaintiffs assertion that it would have been profitable.**

The Magistrate is incorrect, the TAC clearly states at paragraphs 63 & 70 that this was an investment opportunity to purchase property, buildings, and warehouses. Plaintiffs cannot know the value of the profit unless plaintiffs conduct discovery. Plaintiffs do know that the property was valuable because Captain Meimaris and Mr. Leroux had located and vetted the properties together, as an investment venture.   The properties were not only near the airport but also near the ports, and this is why Captain Meimaris was willing to invest his hard earned money because the deal promised to be lucrative.   Therefore the Magistrate's contentions are incorrect.

3.      **Plaintiffs object to the Magistrate stating   that "the TAC Does not explain on what basis Captain Meimaris was entitled to or would have been permitted by the creditors to either purchase preference shares in TBS international or to have the new TBS parent grant him new class B stock"**

The Magistrate is incorrect, as the TAC in paragraphs 91-110 does explain how Captain Meimaris would have been permitted to acquire the preference shares.   Captain Meimaris would have been permitted to hold preferred shares had the defendants allowed him to put money into the monies which were required by the disclosure statement.   Captain Meimaris, upon learning that monies were required to be contributed by the founders of TBS, approached the defendants Royce and Blatte and requested to put money in. The defendants told him it was not necessary and that they were protecting his interests.   The defendants thereafter put money in and themselves received preference shares which were later turned into new class B shares in the new parent company.   Hence, Captain Meimaris thereby lost this opportunity.

2

This is explained very clearly in the TAC.  Captain Meimaris was a founder of TBS, remained active in the company as a consultant, and participating in its meetings. He should have been offered the opportunity to receive preference shares along with the other founders.  This is how the Defendants committed fraud and breached their fiduciary duty to Captain Meimaris. Therefore the Magistrate's contentions are incorrect.

**4.      Plaintiffs object to the Magistrate stating that Plaintiffs do not explain why Captain Meimaris' 10% ownership in TBS Commercial Group required Defendants to obtain his consent before entering into Commercial Management Agreements**

        The Magistrate erroneously makes the statement that Plaintiffs do not explain why Captain Meimaris' 10% ownership required Defendants to obtain Captain Meimaris' consent. However, the TAC states the great lengths that the Defendants went through to obtain his consent.  First, Defendants Royce and Prieto tried to get Captain Meimaris to sign a document to relinquish his shareholdings in TBS commercial group for no compensation. Second, Defendant Royce met with Captain Meimaris' daughter in order to convince her to persuade her father to relinquish his shares in TBS commercial group without any compensation. Defendant Royce went so far as to tell her that others were doing the same, which was a falsehood. Finally, Royce made a trip to New Jersey in December, 2011, to visit Captain Meimaris at his home in order to convince Captain Meimaris to relinquish his shares in TBS commercial group for no compensation in front of Captain Meimaris' family.  It may be clearly inferred that these attempts to obtain Captain Meimaris' signature and consent meant that his consent was indeed needed to effectuate the deal.    Certainly, the Defendants believed that. Clearly, Defendants would not have gone to such lengths to legally obtain Captain Meimaris' consent had it not been required.  Captain Meimaris had a 10% ownership in TBS Commercial Group, and then he did not.   It mysteriously disappeared presumably at the hands of the Defendants. Defendants either extinguished Captain Meimaris' ownership when they closed and reopened the companies which comprised TBS Commercial Group or they melded

3

Captain Meimaris' 10% ownership with their own ownership in the Commercial Group.

5.    **Plaintiffs object to the Magistrate stating that Plaintiffs do not identify which companies were closed and reopened**

First, the entire Commercial Group was comprised of over 25 companies.  Captain Meimaris' 10% ownership was extinguished in each and every one of those companies when his shares were stolen from the Commercial Group.  Therefore, it is not necessary for Plaintiffs to name each company which was closed and reopened.  Captain Meimaris's had a 10% stake in the Commercial Group as a whole.   This included all corporate entities within the Commercial Group. The reason Plaintiffs specifically identify the company in Ecuador in its Complaint is because Plaintiffs knew for a certainty from Mr. Jaime Leroux, the President of that Company in Ecuador that Captain Meimaris' shareholdings existed in 2013, and by 2014 they did not.  According to Mr. Leroux, he handed the shares over to Defendants Royce, Blatte and Gregg McNelis. Further, Plaintiffs also mention Ecuador as it happened well after the closing of the Bankruptcy proceeding, thus extending the running and expiration of the statute of limitations under the continuous wrong doctrine.   When all the companies closed and reopened is a question that can be addressed in discovery.  Plaintiffs cannot be expected to be privy to information to which they have no access.   However, Plaintiffs are certain that the closing and reopening of some of the companies in the Commercial Group happened as recently as 2018, once again under the continuous wrong doctrine, keeping Plaintiffs within the statute of limitations well beyond 2014.   In both the Commercial Group and TBS Ecuador, Captain Meimaris' shares were there, but then they were not, due to the actions of these Defendants.  For the foregoing reasons the Magistrate's contentions are incorrect.

6.    **Plaintiffs object to the Magistrate stating in the R&R that the Fifth cause of action names only Mr. Leroux**

The statement that the Fifth cause of action only pertains to Mr. Leroux by the Magistrate is not only incorrect, but patently false.   The Fifth cause of action mentions Mr. Leroux's part in the disappearance of Captain Meimaris' shares in TBS Ecuador, as well as the theft of those shares by Defendants Royce and Blatte.   The Defendants Royce and Blatte were active participants in the theft of the shares.   Paragraphs 135-138   of the TAC clearly states that Mr. Leroux helped enable the transfer of Captain Meimaris' shares in TBS Ecuador, to Defendants Royce and Blatte.   Mr. Leroux along with Defendants Royce and Blatte are all equally part of the Fifth cause of action.   Further, paragraph 138 of the TAC alleges that Mr. Leroux along with the other Defendants committed fraud and breached fiduciary duties owed to Captain Meimaris. The Magistrate was incorrect for the foregoing reason.

**7.** **Plaintiffs object to the Magistrate stating that the TAC is the "Seventh in a series of similar pleadings filed by plaintiffs in two Courts.**

First, the New York Supreme Court case in which Plaintiffs initially filed this law suit is a separate case.  (See Case No. 651588/2018) Second, it is incongruous that a "Third" Amended Complaint be termed a "Seventh" Amended Complaint.  The Magistrate actually goes through the procedural history of the complaint before this Court.  What is revealed is that this indeed is the Third Amended Complaint. (See Docket No's 12, 18, 25 & 62).   Third, assuming for arguments sake that Plaintiffs melded the Supreme Court case and this case together, which is unheard of and procedurally impossible, the record shows that  only two Complaints were filed in the Supreme Court case, one on April 3, 2018 and another on April 23, 2018. (See Supreme Court Case id.  Finally, the Magistrate is factually wrong and procedurally wrong to combine the two separate actions.  However, assuming arguendo that they were combined, there were only six submissions counting both Courts.  Further, it is disconcerting that the Magistrate states on page 13 of the R&R that the TAC is the "Seventh" submission and then later on on pages 16 and 35 inconsistently states that this TAC is the "Sixth" submission.   In any event, such an observation is immaterial.  For the foregoing reasons the Magistrate's contentions are

incorrect.

**8.      Plaintiffs object to the Magistrate stating that Plaintiffs urged the Court not to hold a Conference with regard to Defendants request for more time to answer the TAC**

Once again the Magistrate is not stating fact.  On July 13, 2018, Defendants requested either that the Court hold the TAC in abeyance until it could be discussed at a pre-motion conference or in the alternative that the Court give the Defendants 30 days to respond to the TAC. (Docket No. 49 at 2-3). On July 13, 2018, Plaintiffs asked the Court to not grant Defendants additional time to respond to the TAC.  (Docket No. 50 at 4-5) Plaintiffs never even addressed the issue of a pre-motion conference, nor did Plaintiffs "urge" the Court not to hold the conference.  "Urge" is a strong word.  Not only did Plaintiffs not make such effort, Plaintiffs never mentioned the pre-motion conference and never commented on this portion of Defendants July 13, 2018 request.  Further, it is on record that every time the Court scheduled a conference, it was the Defendants who requested adjournments, as recent as yesterday. (See Docket No's. 56, 67, 102, 105, 110, 114). It is also on record that Plaintiffs always welcomed and wanted a Court conference because Plaintiffs opposed the adjournments on at lease four occasions.   (See Docket No's. 68, 106, 111, 115). For the foregoing reasons the Magistrate's contentions are incorrect.

**9.      Plaintiffs object to the Magistrate's statement that she denied Plaintiffs the right to Amend their Complaint.**

On September 24, 2018, Plaintiffs requested to amend their complaint in order to "more accurately" describe the roles of some of the Company Defendants.  (See Docket No. 63) On September 25, 2018, the Magistrate wrongly denied Plaintiffs the right afforded them under Rule 15 stating that they had already filed six versions of the complaint and that Plaintiffs had stated that the complaint had no fatal defects. (See Docket No. 65).    What the Magistrate actually stated in Docket No. 65 was that  "no further amendments will be granted pending

6

Defendants' responses". For the foregoing reasons the Magistrate is incorrect.

**10.     Plaintiffs object to the Magistrate's omission of facts in the TAC from her Report and Plaintiffs' three Memorandum of Law in Opposition to Defendants' Motions toDismiss (Docket No's 79,81,83).   Plaintiffs further object to the Magistrate's use of partial facts and/or partial statements from Plaintiffs TAC or Plaintiffs' three Memorandums of Law in Opposition to Defendants' Motions to Dismiss in the Magistrates Report**

On page 18 of the R&R the Magistrate states that Plaintiffs argue that "the six year fraud statute commenced running with the close of the bankruptcy proceeding on June 29, 2012, rendering this action timely because it was filed on May 17, 2018." The Magistrate takes this partial statement from Plaintiffs' Memorandum of law in Opposition to Defendants' Motion to Dismiss at page 9.   However, the Magistrate erroneously chooses to leave out the entire statement which Plaintiffs made on page 9 of their Memorandum of Law.   Plaintiffs actually stated that "The last wrongful act could either be construed as the date the Bankruptcy case which was concluded on June 29, 2012 or as recently as this year with the closing of the TBS Commercial Group Companies." (Docket No. 70 at 9).

Needless to say, the Magistrate improperly concluded that the Plaintiffs were only arguing one date as the commencement of the running of the stature of limitations.   Thus, the Magistrate omitted facts which change the entire meaning of Plaintiffs argument as well as alter its legal ramifications.   For the foregoing reasons the Magistrate's contentions are incorrect.

**11.     Plaintiffs object to the Magistrates' determination that discovery has not commenced due to the pendency of the Motions to Dismiss**

Plaintiffs have neither spoken to the Magistrate about Discovery nor to the Defendants. The pendency of the motions to dismiss has nothing to do with why discovery has not

7

commenced.   Plaintiffs can only surmise that the Magistrate may be in contact with the Defendants to reach this conclusion when Discovery has not actually been stayed.   Plaintiffs did not commence discovery as they were dealing with serious family health issues.   For the foregoing reasons the Magistrate's contentions are incorrect.

For all of the foregoing reasons, Plaintiffs specifically object to the Magistrates's findings of fact, including omissions and misstatements of material facts in the Report and Recommendation.

II.     **Plaintiffs object to the Magistrate's conclusion on page 26 that the fifth cause of action runs only against Jaime Leroux and that this cause action was dismissed when the claims against Jaime Leroux were dismissed and also object to the Magistrates' dismissal of the fifth cause of action. Further, Plaintiffs object to the Magistrate stating that Plaintiffs attempted to "recast" the fifth cause of action as against Defendants Royce and Blatte  and that the Plaintiffs made vague and conclusory assertions.**

The Magistrates' statement that Plaintiffs have attempted to "recast" the fifth cause of action as against Royce and Blatte is patently incorrect as can plainly be seen in both the TAC and in Plaintiffs' Memorandum of Law in Opposition to Royce and Blatte's Motion to Dismiss. In the TAC Plaintiffs clearly state that Royce and Blatte stole Captain Meimaris' TBS Ecuador shares with the help of Jaime Leroux.   The TAC further states in that cause of action that all Defendants committed fraud and all Defendants breached their fiduciary duties owed to Captain Meimaris.   The fifth cause of action specifically mentions Royce and Blatte stealing Captain Meimaris' TBS Ecuador shares.    The fifth cause of action was meant to implicate all parties who committed the theft, fraud and breach of fiduciary duty.   The fifth cause of action simply added Mr. Leroux as an active participant in the wrong.   It did not absolve Royce and Blatte for their improprieties with regard to the Ecuador shares.   That is, Royce and Blatte were active participants, as the fifth cause of action states, since the actively stole the shares.   When

8

Mr. Leroux handed over Captain Meimaris' shares to Royce and Blatte or closed and reopened the Ecuador company without Captain Meimaris and gave to the Defendants Captain Meimaris' shares, the Defendants knowingly and willfully took the shares which did not belong to them and therefore were complicit and active partners in harming Captain Meimaris.

Plaintiffs object to the Magistrate stating that the Plaintiffs used vague and conclusory assertions.  The shares were in Captain Meimaris' hands and then they were gone.  The shares then reappeared in the hands of the Defendants, Royce and Blatte.  There is nothing vague or conclusory about that.  It is clear in the TAC that, but for the Defendants theft and fraud, Captain Meimaris would still have his TBS Ecuador Shares.

Plaintiffs oppose the Magistrate's statement that all of the acts in the fifth cause of action are attributed to Mr. Leroux is clearly inaccurate.  The Magistrate's statement that Royce and Blatte stealing Plaintiffs shares is a mere conclusory allegation, is also incorrect.  It could not be more plain that theft occurred when inexplicably Captain Meimaris' shares ended up in the hands of Defendants Royce and Blatte.  These are not conclusory allegations.  These are facts Plaintiffs alleged which with appropriate discovery they are prepared to prove.

Plaintiffs further object to the Magistrate statement on page 26 of the R&R that the Plaintiffs failed to make any allegation that Royce and Blatte made representations to Captain Meimaris with regard to the TBS Ecuador shares.  When someone is defrauded or covertly stolen from, the perpetrators do not advertise it by stating "I am stealing from you." Further, under New York Law, fraud is not only committed by words but also by conduct.  *In Cost Controls v. Am. Preferred Prescription*, 1997 Bankruptcy. LEXIS 387, at 64 (Bankruptcy. E.D.N.Y. March 21, 2997, Chapter 11, Case No. <u>893-84170-478</u> (FGC), Adv.Pro.No. <u>895-8419-346</u> (FGC) the Court dismissed Defendants motion to dismiss based upon the fraudulent conduct of the Defendants.  In that case, with fact similar to this case, the Defendants stole Plaintiffs shares-by virtue of that theft they stole Plaintiffs mail order business.  That act of theft amounted to fraud.  In this case, the theft of Captain Meimaris' shares

amounts to fraud.

Under Rule 12(B)(6) this cause of action clearly states a claim against Royce and Blatte for fraud and breach of fiduciary duty upon which relief can be granted.  The TAC clearly states claims against Royce and Blatte at pages 21-22 and not just against Mr. Leroux.  Under Rule 12(b)(6) a plaintiff must assert a plausible claim and set forth sufficient factual allegations to support that claim.  In the fifth cause of action, Plaintiffs did just that. They asserted a plausible claim against the Defendants.   They explained how Mr. Leroux effectuated the transfer of Captain Meimaris' shares to Defendants Royce and Blatte and that Royce and Blatte along with Gregg McNelis took and now hold the shares of TBS Ecuador which belonged to Captain Meimaris. These assertions are not conclusory. The shares were in Captain Meimaris' hands but were stolen based on the facts reported. With the aid of Mr. Leroux, Captain Meimaris' shares were taken by Defendants Royce and Blatte.  There is nothing conclusory about that.

For the foregoing reasons this cause of action should not be dismissed since there are cognizable claims against Defendants Royce and Blatte in the fifth cause of action.

**III.    Plaintiffs object to the Magistrate's recommendation that causes of action 1,2,3,4,6 & 7 should be dismissed as they are time barred and that the Estate's primary torts are not viable or timely**

Causes of action 1,2,3,4,6 & 7 in the TAC should not be dismissed as being time barred. Defendants entered into an elaborate scheme of a series of wrongdoing including but not limited to fraud, conspiracy, and breach of corporate fiduciary duty and loyalty against Captain Meimaris. This conduct spanned almost a decade, beginning in 2008 and ending in either 2014 with the theft of Captain Meimaris' TBS Ecuador shares or last year with the closing of TBS Commercial Group Companies.   These actions were related and continuous.  Defendants did not stop their greed in 2012 with the close of the bankruptcy proceeding but they continued

10

through 2014 in order to steal the last of Captain Meimaris' shares in a TBS affiliated company. These Defendants stole Captain Meimaris' life's work.  Their greed had no limits.

The Statute of limitations for fraud in New York under C.P.L.R. 213 (8) states that "an action based on fraud" must be commenced within "the greater of 6 years from the date the plaintiff or the person who claims the fraud could have discovered it."  While the statute gives a 6 year limitations period, all of Plaintiffs' claims fall under the continuous wrong doctrine. Under the continuous wrong doctrine the limitations period is tolled to include the commission of the last wrongful act.  *Nuss v. Salad*, 2016 U.S. Dist. LEXIS 98529, at *28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279.   In New York, the Courts have applied this doctrine to cases of fraud. *Tiberiv v. CIGNA Corp*. 89 F3rd 1423 (10th Cir 1996), Merine ex. Rel.-Bache Util. Fund v. Prudential- Bache Util. Fund.m859 F.Supp 715, 725 (S.D.N.Y. 1994).   *Affordable Hous. Assoc., Inc. v. Town of Brookhaven*, 150 A.D.3d 800 (2d Dep't 2017). The Second Department has held it applicable in fraud cases. *Lucchesi v. Perfetto,* 72 A.D.3d 909, 910 (2d Dep't 2010); *Sullivan v. Keyspan Corp., 155* A.D.3d 804, 807 (2d Dep't 2017) and *Izzo v. Town of Smithtown,* 151 A.D. 3d 1035, 1035 (2d Dep't 2017).

In <u>Nuss</u>, supra, the Court held that "the continuing wrong doctrine 'is usually employed where there is a series of continuous wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act.'"" <u>*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*</u>, No. 14-CV-7051, 2016 WL 1092673, at *8 (S.D.N.Y. Mar. 21, 2016) (quoting <u>*Selkirk v. State*</u>, 671 N.Y.S.2d 824, 825 (App. Div. 1998)); <u>see also *Butler v. Gibbons*</u>, 569 N.Y.S.2d 722, 723 (App. Div. 1991) (reserving dismissal of a complaint on statute of limitations grounds because "a new cause of action accrued each time" the defendant caused a new injury to the plaintiff as part of his scheme).   Further, in <u>Butler v. Gibbons</u>, supra, <u>each time there was a new cause of action, the Defendant caused new injury to Plaintiff, and therefore, under the continuous wrong doctrine, the Complaint was not dismissed on the grounds of Plaintiffs being outside of the statute of limitations.</u>  Similar to our case.  Each time

these Defendants caused a new injury to Plaintiffs, (i.e. Usurping Corporate Opportunity, pushing Captain Meimaris out of the Reorganization deal, forcing Captain Meimaris to not sell his shares in TBS, stealing TBS Commercial Group Shares, Stealing TBS Ecuador Shares, etc.) a new cause of action occurred.

Further, in Nuss, supra, the Court held additional actions by the Defendants, "the dilution of the Nusses' ownership interest in BRJV—is properly viewed as an additional unlawful act and not as a "continuing effect of earlier unlawful conduct" because the acts required additional, affirmative acts by the Defendant.  Such as in the present case.  Each act of these Defendants constituted a new cause of action, and were additional affirmative acts varying from theft of shares to breach of fiduciary duty to usurping corporate opportunities.

The Magistrate cannot make the determination that the Defendants are correct that the statute has tolled because that is a question of a triable issue of fact which is raised at trial for the jury to determine. *3rd & 6th, LLC v. Berg, 149 AD3d 794, 795-796 (2d Dep't 2017); McDermott v. Torre, 82 A.D.2d 152, 153 (1st Dep't 1981), Demchik v. Gen. Motors Corp., 821 F2d 102, 106 (2d Cir. 1987)* . The Court held in these cases that whether the continuous wrong doctrine is applicable is a matter of law which must be determined at a trial. *See McDermott, supra at 160-161.*   Similar to our case a Magistrate cannot determine whether the continuous wrong doctrine is applicable and make a conclusory determination that the statute of limitations has expired and dismiss the case. This is a question for a jury to determine.

In light of the foregoing the Magistrate improperly concluded that the statute of limitations had expired for these causes of action. Under the continuous wrong doctrine, they clearly are not time barred.  The Magistrate has incorrectly and erroneously calculated the time as tolling in February 2012, when the last wrongful acts were either in 2014 with the illegal transfer and theft of Captain Meimaris' TBS Ecuador shares or as recently as last year with the closing of more of the TBS commercial groups companies. A trier of fact must determine the tolling of the statute of limitations not the Magistrate. For the foregoing reasons the

Magistrate's legal contentions are incorrect.

**V.**      **Plaintiffs object to the Magistrate's Recommendation that the First cause of Action regarding the Defendants' usurping a corporate opportunity from Captain Meimaris is time barred and not a viable cause of action.**

As previously stated in more detail in paragraph 2 supra in the period between 2009-2011 Defendants schemed to deprive Captain Meimaris of his opportunity to invest in certain properties, business' and warehouses in Ecuador by lying to him.  The Defendants then took the opportunities which belonged to Captain Meimaris themselves and invested in them. Plaintiffs again object to the Magistrate who incorrectly concludes without basis, on pages 6 and 29 of the report that this is a vaguely described business opportunity. Plaintiffs cannot describe these business opportunities more explicitly without discovery,  their margin of return on the investment or their profitability.

 In sum, Defendants theft of TBS Ecuador shares as well as recent as last year, 2018, the closing of more TBS Commercial Group Companies were distinct new causes of affirmative actions by the Defendants. The statute of limitations for this cause of action did not run in 2012 as the Magistrate erroneously states, it tolled began to run in 2014 or last year with the closing of the TBS Commercial Group companies.  In so being, this cause of action is viable and within the statute of limitations and the continuous wrong doctrine also applies as stated in the analysis on Page 9-11   supra.   Further, as stated on page 11 supra, whether the statute of limitations and the continuous wrong doctrine expired is a question of law to be determined at trial.    For the foregoing reasons the Magistrate's contentions are incorrect.

**VI.**      **Plaintiffs object to the Magistrate's conclusion that the Second Cause of Action whereby Defendants prevented Captain Meimaris from selling his shares in TBS International is time-barred, is not viable and is not actionable as fraud in New York.**

Contrary to the Magistrates contention this claim is viable and actionable under New York law.  Plaintiffs were fraudulently prohibited from selling their stock in TBSI through

deceitful practices of Defendants Royce and Blatte.  These Defendants conspired to prevent and persuade Captain Meimaris  not to sell so they could profit from the sale of their own shares.  They did this by making up a story of  how it would prejudice and jeopardize the company as it was considering a secondary offering.   Defendants specifically stated to Plaintiffs that it would not "look good" if a founder sold off a lot of his shares.  (See Meimaris Memo. Of Law in Opposition Docket No.  79 at pgs. 11-13) Defendants only told Plaintiffs not to sell, so that they could sell over $70,000,000.00 worth of their own shares.   From Defendants lies, Plaintiffs lost close to $51,000,000.   On the insider trading log, the only founder not selling a large amount of  shares in May 2008 is Captain Meimaris.  (See Meimaris Affirmation Docket No. 91   Exhibit. 2)

The Magistrates' contentions are incorrect that this claim is not cognizable under New York Law.   A plaintiff alleging fraud is entitled to recover pecuniary loss suffered as a result of misrepresentation causing harm.  *Continental Cas. Co. V. Pricewaterhousecoopers LLP, 15 N.Y. 3d 266 (2010)* Damages recoverable under the "out of pocket" rule are intended to compensate Plaintiffs from what they lost because of the fraud. *Lama Holding 88 N.Y/2d at 421, Clearview Corp. v Gheradi, 88 A.D.2d 461,468 (2d Dept 1982)*.   "Out of pocket considerations do not prevent recovery of other consequential damages proximately caused by reliance on the misrepresentation. *Clearview 88 A.D.2d at468.*   When the misrepresentation is willful, wanton or malicious, a Plaintiff is entitled to recover punitive damages. *Chase Manhattan v. Perk 65 A.D. 2d 207,211 (4th Dept 1978).*   Under existing law, Plaintiffs are entitled not only to damages but also punitive damages as the fraud perpetrated by Defendants was willful, wanton and malicious. Accordingly, this claim should not be dismissed.

Further, the Magistrates' contentions that New York does not recognize "holder claims" is patently incorrect. In *Glaubach v. PricewaterhouseCoopers, LLP, 2018 N.Y. Slip. Op 30875(U), *12 (Sup. Ct., NY County 2018); Citigroup Inc. v. AHW Inv. Partnership (140 A3d 1125 (Del 2016)* a plaintiff, who did not sell her shares in reliance on the corporation's

14

misrepresentations, had a holder claim against the corporation.  It is well settled law that if you can establish that the plaintiff is not seeking   "hypothetical lost profits" and   that plaintiff "suffered a definite, measurable, out-of-pocket loss — the loss of the value of [shares] and interest due thereunder" - due to the alleged false representations of defendant, plaintiff will survive a motion to dismiss on that issue.  *Universal Inv. Advisory SA v. Bakrie Telecom PTE, Ltd., 51 Misc. 3d 1212(A), 2016 N.Y. Slip Op 50631[U], *7 (Sup Ct., NY County 2016 at*7-8).* In its decision in *AHW Inv. Partnership v. CitiGroup Inc., 980 F. Supp. 2d 510, 521 (S.D.N..Y 2013),* the court stated that a plaintiff alleging a holder claim must *"allege a special relationship, that was necessary for a negligent misrepresentation claim and…cognizable damages proximately caused by the fraud to support their fraud claim." Id. at 520.*

The *AHW* Court, id. at 520, determined that holder claims do exist and are recognized in New York.  However, a special relationship must exist as well as cognizable damages caused by the fraud to support the fraud claim.  In this case, the losses suffered by the Plaintiff are not hypothetical rather they amounted to approximately 1,000,000 shares which ultimately were worth approximately $51,000,000.00 plus interest, because in May 2008, TBSI shares were $51.00 per share.   There was a special relationship, the Plaintiffs and Defendants were business partners and the damages were proximately caused by the fraud which the Defendants perpetrated on the Plaintiffs.  For the foregoing reasons the second cause of action should not be dismissed as these Defendants connived to prevent Captain Meimaris from selling his shares in TBSI so that the Plaintiffs' holder claims are viable claims under New York Law.

This claim falls under the continuous wrong doctrine and as such the statute of limitations has not expired as to this claim.   See analysis of continuous wrong doctrine and statute of limitations at pages 9-11 supra applicable also to this cause of action.

The statute of limitations should be determined at trial not by the Magistrate as it is a matter of law.   See supra at 11 also applicable to this cause of action.   For the foregoing reasons the Magistrate's contentions are incorrect.

**VII.**   **Plaintiffs object to the Magistrate conclusion that the Third cause for breach of fiduciary duty is time barred.**

While it is true that Captain Meimaris found out about the Defendants' wrongdoing in 2011, from Defendant Royce himself, who came to Captain Meimaris' home to brag to him that Captain Meimaris was not part of the newly reorganized TBS, the Magistrate erred in stating that this claim is time barred.

First, these Defendants not only breached their fiduciary duty to Captain Meimaris as his business partners, but they violated a series of other statutes. Defendants violated §349 of the Deceptive Practices Act under New York's General Business Law which prohibits "unlawful acts or practices in the conduct of business, trade or commerce...".   Further, these Defendants violated the Federal Elder Justice Act which prohibits financial exploitation of the elderly and defines it as "the fraudulent or otherwise unauthorized or improper act...that uses the resources of an elder for monetary or personal benefit, profit or gain,...that results in depriving the elder the rightful access to, or use of benefits, resources, belongings or assets." Finally, these Defendants committed theft of a business opportunity, the Reorganization deal.   Under the "corporate opportunity doctrine" "the theft of a business opportunity by a corporate director is actionable under New York Law." You Han Young v. Choi, 49 A.D. 3D 535 (N.Y. App.Div. 2d Dep't 2008). With almost identical facts to this case the New York Supreme Court held in *Appell v. L.A.G. Corp.* 2008 Slip Op. 31988 that Plaintiff's business partners were liable for excluding him from joining in a new profitable business venture and that they breached their fiduciary duty owed to him as business partners.

The statute of limitations for breach of fiduciary duty is 6 years for equitable relief under

C.P.L.R. 213 (1), while under C.P.L.R. 214 (4) the statute of limitations for monetary relief is 3 years.  However, where the breach of fiduciary duty is predicated on fraud the six year statute of limitations applies.  In this case, with the statute of limitations at six years, the continuous wrong doctrine applies to toll the statute.

As previously started above, under the continuous wrong doctrine the limitations period is tolled to the commission of the last wrongful act.  *Nuss v. Salad*, 2016 U.S. Dist. LEXIS 98529, at *28-29 (N.D.N.Y. July 28, 2016, No. 7:10-cv-0279.   In New York, the Courts have applied this doctrine to cases of fraud. *Tiberiv v. CIGNA Corp*. 89 F3rd 1423 (10th Cir 1996), *Merine ex. Rel.-Bache Util. Fund v. Prudential-Util. Fund.* 859 F.Supp 715, 725 (S.D.N.Y. 1994). *Affordable Hous. Assoc., Inc. v. Town of Brookhaven,* 150 A.D.3d 800 (2d Dep't 2017). The Second Department has held it applicable in fraud cases. *Lucchesi v. Perfetto*, 72 A.D.3d 909, 910 (2d Dep't 2010); *Sullivan v. Keyspan Corp*., 155 A.D.3d 804, 807 (2d Dep't 2017) and *Izzo v. Town of Smithtown*, 151 A.D.3d 1035, 1035 (2d Dep't 2017).

The instant claim is not time barred under the continuous wrong doctrine.  As previously stated, Defendants entered into an elaborate scheme of continuous wrongdoing including but not limited to fraud, conspiracy and breach of fiduciary duty and loyalty against Captain Meimaris which spanned almost a decade.  Beginning in 2008 and ending in either 2014 with the theft of Captain Meimaris' TBS Ecuador shares or last year with the closing of TBS Commercial Group Companies. These actions were consistent and continuous. See analysis of statute of limitations and continuous wrong doctrine on pages 9-11 supra applicable here also.

Finally, the statute of limitations and the continuous wrong doctrine are matters of law which are determined at the time of trial.  See supra at page 11.  For the foregoing reasons the Magistrate was incorrect.

## VIII.   <u>Plaintiffs object to the Magistrates' concluding that the Fourth cause of action is not for fraud but for breach of fiduciary duty and that this cause of action is time barred.</u>

This cause of action was based upon Defendants' Royce, Blatte and Prieto trying to

17

fraudulently induce Captain Meimaris to hand his shares over to them.  The Defendants tried several times by deceptive means to effectuate this transfer.  The fact that Captain Meimaris never handed the shares over to them is immaterial because the Defendants ultimately fraudulently took those shares and used them without the Captain's consent.  While this may amount to breach of fiduciary duties as well, it is still fraud.  It is also immaterial that once the shares were stolen by the Defendants, the Company's Reorganization Plan documented that the Commercial Group was part of that Plan. This has nothing to do with the Defendants fraud. Indeed, the Defendants, used the Reorganization to hide their misconduct. This clearly contributed to the fraud. But for the Defendants fraudulent activity, the shares would still be in Captain Meimaris' hands- or now, as part of his Estate.  Further, under this analysis, this action is therefore not time barred as the Magistrate erroneously contends.  See pages 9-11 supra for analysis of statute of limitations and the continuous wrong doctrine applicable also to this cause of action.

Finally, it is inappropriate for the Magistrate to make the determination that the Defendants are correct regarding whether the statute has tolled, because that is a question of a triable issue of fact which is raised at trial for the jury to determine. *3rd & 6th, LLC v. Berg,* 149 AD3d 794, 795-796 (2d Dep't 2017); *McDermott v. Torre,* 82 A.D.2d 152, 153 (1st Dep't 1981), *Demchik v. Gen. Motors Corp.*, 821 F2d 102, 106 (2d Cir. 1987) .

### IX.  <u>The Magistrates' conclusions that none of the Estate's primary torts are viable and timely and that the continuous wrong doctrine does not apply to Plaintiffs claims and therefore the Plaintiffs Sixth and Seventh causes of action are not viable are wrong</u>

As stated in the foregoing analysis, all of the Estate's primary torts are viable.  The Magistrate erroneously states that Plaintiffs' sixth cause of action predicated on conspiracy and seventh cause of action regarding the Company Defendants' aiding and abetting the commission of the Torts in all of the other causes of action fail as being time barred and are not viable.  All of the claims are viable and none of the claims are time barred.  Plaintiffs' claims  fall

18

under the continuous wrong doctrine**.**

The Magistrate is wrong in stating that the continuous wrong doctrine does not apply. In this case, the wrongful acts began in 2008 and ended either in 2014 with the stealing of Captain Meimaris' TBS Ecuador shares or as recently as last year with the closing of TBS commercial group companies.   In either case, Plaintiffs' claims are still within the statute of limitations.   Discovery and a jury will determine when the last unlawful act occurred.   Further, the Plaintiffs have demonstrated in the foregoing analysis all of the wrongs under the continuous wrong doctrine were committed within the appropriate time.  Hence, Plaintiffs sixth and seventh causes of action would not fail as the primary torts are viable and none of the claims are time barred.   For the foregoing reasons the Magistrate's contentions in this respect are incorrect.   See pages 9-11 supra applicable here regarding statute of limitations and the continuous wrong doctrine.

## X.      Plaintiffs oppose the Magistrates incorrect statement that the TAC does not allege any "bad acts" after June 29, 2012

The Magistrate is clearly wrong in stating on page 34 of the R&R that Plaintiffs do not allege any "bad acts" after June 29, 2012.  Plaintiffs Fifth cause of action is clearly based on acts which took place from 2013 to 2014.    The Magistrate simply chooses to ignore not only the acts which took place in 2013-2014, but also that TBS commercial group companies closed in 2018.  Plaintiffs found out about the closures after the TAC was filed and was denied their right under rule 15 to amend their complaint to add those facts.   This is why Plaintiffs mentioned it in their Memorandum of Law in Opposition to the Motions to Dismiss. For the foregoing reasons the Magistrate is wrong.

## XI.      Plaintiffs object to the Magistrate's conclusion that since the claims are not viable and that they are time barred and not saved by the continuous wrong doctrine, they

19

**should be dismissed under Rule 12(b)(6).**

As the foregoing analysis shows, none of the claims are time barred.  Further, all of the claims are saved by the continuous wrong doctrine as they commenced in 2008 and ended either in 2014 or as recently as last year.

Rule 12(b)(6) is a defense used when there has been "failure to state a claim upon which relief can be granted".   To withstand a motion to dismiss pursuant to 12(b)(6) "a Complaint must plead facts sufficient "to state a claim of relief that is plausible on its fact." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 570 (2007). Further, in evaluating a 12(b)(6) motion a District Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Nielsen v. Rabin*, 746 F.3d 58,62 (2d Cir. 2014); *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir 2006) Plaintiffs have pleaded their claims fully.

Plaintiffs' claims are viable and timely.   Further, the primary torts have been pleaded with enough detail as to meet the requirements of the elements of the torts.   Finally, as such, the sixth and seventh causes of action for conspiracy and aiding and abetting are viable claims as the torts upon which these causes of action are predicated are also viable and timely.

Plaintiffs have shown from the facts in the TAC that there are claims upon which relief can be granted.   The TAC shows a continuous scheme of fraud, deception, and breach of fiduciary duties and loyalty spanning 2008-2018.  Captain Meimaris' Commercial Group shares were in his hands and then they were in the hands of the Defendants without his consent, Captain Meimaris' Ecuador shares were in his hands and then they were in the hands of the Defendants without his consent, Captain Meimaris was prevented from investing in the Reorganization deal by his partners, Captain Meimaris was prevented from investing in in opportunity in Ecuador only so that his partners invested in the very same deal and Captain Meimaris was prevented from selling the bulk of his TBS shares only so that his partners could

sell their shares themselves  Surely, these are more than sufficient facts to state a claim that is plausible on its face.   In so being, in light of the law stated above, the court should accept these allegations as true and in favor of the Plaintiffs.

Finally, under Rule 8(a)(2) the complaint need not set forth detailed factual allegations, but should set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Plaintiffs clearly have set forth statements in their TAC showing that they are entitled to relief. Therefore, in light of the foregoing, the Magistrate is completely incorrect in stating that these claims should be dismissed pursuant to F.R.C.P. 12(b)(6).  See supra pages 9-11 applicable here regarding the statute of limitations and continuous wrong doctrine.   For the foregoing reasons the Magistrate is wrong.

**XII.**   **Plaintiffs oppose the Magistrates recommendation to not give the Plaintiffs another opportunity to amend their Complaint as this violates due process**

Contrary to the Magistrates contention, Plaintiffs did not Amend their complaint six times.  Plaintiffs only Amended their Complaint three times.  It is highly inappropriate, in this respect for the Magistrate to rely on a completely separate case in another Court.  However, even assuming arguendo that it was appropriate, which it was not, for the Magistrate to mention the New York Supreme Court case which Plaintiff originally filed, none of the amendments to the Plaintiffs complaint were substantive with the exception of one amendment in the Supreme Court case.  Most of the amendments had to do with technical deficiencies: changing the name of the Plaintiff accurately reflecting her role and adding Defendants.  Under F.R.C.P. Rule 15(a), Plaintiffs had and have a legal right to amend their complaint and such "leave shall be freely given when justice so requires." *Cortes Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2D Cir. 1991); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *Ricciuti v. N.Y.C. Tr. Auth*., 941 F.2d 119, 123 (2D Cir. 1991).  Further, in absence  of '"undue delay, bad faith or dilatory motive on the part of the movant..." leave to amend should be, as the rules require "freely given"'  *Leonelli v. Pennwalt Corp.,* 887 F,2d 1195, 1198 (2d Cir. 1989); *Coleman*

*v. Brokers Xpress, LLC,* 375 F.App'x 136, 137 (2d Cir. 2010).   The general policy favoring amendment is to be applied liberally, even where a plaintiff seeks to amend to plead new legal theories and because of this liberal policy leave to amend is generally granted, absent undue delay and bad motive.  *Leaseamerica Corp. V. Eckel,* 710 F.2d 1470, 1473-1473 (10th Cir. 1983)

In light of the foregoing authority and case law, Plaintiffs should be allowed to amend their complaint freely, as justice so requires.   Complaints have been amended as many as ten times in an action.   Further, Complaints may be amended under Rule 15 as late as during discovery and up to trial.  It would be unjust not to allow Plaintiffs to amend their complaint and would violate Plaintiffs's due process.

Finally, Plaintiffs were never "invited" to amend their complaint by the Court or denied such invitation as the Magistrate suggests.   Plaintiffs simply stated that they felt that their Complaint had no fatal defects.   For the foregoing reasons, the Magistrate is incorrect to not allow the Plaintiffs the opportunity to amend under Rule 15 and equally important, to do so violates Plaintiffs' due process under the United States Constitution.

**XIII.**     **Plaintiffs object to the Magistrate conclusion that Helen Meimaris does not have standing to sue in her individual capacity and that the her claims should be dismissed pursuant to Rule 12(b)(1)**

The Magistrate incorrectly states that Helen Meimaris does not have standing to sue in her individual capacity.   In fact, the Magistrate goes on for several pages in her R&R trying to support her incorrectly concluded supposition.    Plaintiffs object to this statement of the Magistrate as Helen Meimaris does have standing to sue.   First, the Magistrate contends that "In order to allege the necessary "personal stake in the outcome of the controversy," *Warth*, 422 U.S. at 498-99, each plaintiff who seeks to invoke the jurisdiction of the federal courts must demonstrate an invasion of her own "legally-protected interest." *Kounitz v. Slaatten*, 901 F. Supp. 22 Case 1:18-cv-04363-GBD-BCM Document 113 Filed 08/20/19 Page 23 of 36 650, 654 (S.D.N.Y. 1995) (quoting Lujan, 504 U.S. at 559).  However, not only is there a personal

22

stake outcome so as to enable Helen Meimaris to invoke federal jurisdiction there are also "legally protected interests" which allow her to invoke federal jurisdiction.  She is the wife and partner of Captain Meimaris.  As stated in the Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss (Docket No. 79 at 7-8), they had reciprocal wills, owned their business' jointly owned all property jointly and had joint bank accounts.  Further, as a beneficiary under the Estate, there certainly is a "personal stake in the outcome of this controversy" and she has "legally protected interests".  Ms. Meimaris' stake is not incidental, it is a sufficient pecuniary interest to enable her to pursue this action against the Defendants individually.   Captain Meimaris worked hard to build his estate for his wife.  Not only was she his partner in all that they did together,  but she is the person who would directly benefit from his work and holdings. Therefore, she certainly has a real pecuniary interest at stake and there is no lack of subject matter jurisdiction under Rule 12(b)(1).

This case was brought in New York Federal Court, while New Jersey Law gives Ms. Meimaris the capacity to sue on behalf of the Estate, it does not govern this case.  It is not only inaccurate for the Magistrate to quote New Jersey Case law to support her conclusions but also inappropriate.  As such, Plaintiffs object to the Magistrate relying on New Jersey Case Law to support her conclusions.

Under Rule 12(b)(1), in resolving a motion to dismiss for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inference in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239,243 (2d Cir. 2014), In so being, in this case, the court should look at the aforementioned facts and those contained in Plaintiffs Memorandum in Opposition of Defendants' Motions to dismiss to draw a reasonable inference in favor of Ms. Meimaris, as the facts clearly show she has a personal pecuniary stake in this matter.  Further, the second circuit has held that "where jurisdictional facts are placed in

23

dispute, the Court has the power and obligation to decide issues of fact by reference to evidence outside of the pleadings" See *Tandon* quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). Tandon proves that the Magistrate incorrectly determined this issue. Tandon further proves that Plaintiffs in this case could  mention facts in other documents as jurisdiction was at issue. In so being, the Magistrate incorrectly concluded that Plaintiffs were trying to cure deficiencies in their Complaint.

That is, the Magistrate stated that because the TAC says nothing of Bank Accounts, reciprocal wills, or title to real property, the Plaintiff cannot "cure the deficiencies" by alleging additional facts in the Memorandum in Opposition to Defendants Motions to Dismiss.  Plaintiffs object to this statement.   Plaintiffs were not trying to cure deficiencies in the TAC.   The TAC never brought up the issue of Ms. Meimaris suing in her individual capacity, as Plaintiffs did not believe it to be an issue.   It is only when the Defendants opposed Ms. Meimaris suing in her individual capacity in their Motions to Dismiss did the Plaintiffs feel the need to explain Ms. Meimaris' capacity to sue as Captain Meimaris' life partner, business partner and beneficiary. According to <u>Tandon</u>, the Court may rely on such issues of fact outside the pleadings.  In light of the foregoing, the Magistrate incorrectly determined this issue.

## IX.    <u>CONCLUSION</u>

In light of the foregoing analysis, Plaintiffs object to the Magistrate stating that the DEFENDANTS' MOTIONS TO DISMISS be granted without prejudice as to Ms. Meimaris' individual claims pursuant to Rule 12(b)(1) and with prejudice as to all of the remaining claims pursuant to tule 12(b)(6).   Plaintiffs have shown in the foregoing that:   all of the claims are viable, none of the claims are time barred, and that the continuous wrong doctrine applies to all of the claims.  Also, Plaintiffs have proved that the claims should not be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6) respectively. Further Plaintiffs identify the critical factual errors in the R&R.  Finally, It is up to a jury to determine triable issues of fact such as when a statute of limitations tolls or expires.

Plaintiffs further respectfully request that the Court take notice of Captain Meimaris' sworn Affidavit (See Attorney Affirmation Docket No. 90 Exhibit 1) and that the Court allow Plaintiffs to Amend their Complaint. Finally, Pursuant to U.S.C. §636(b)(1)(C) Plaintiffs respectfully request that the Court make a de novo determination of those portions of the report to which objections are made.

Dated:          August 31, 2019                          Respectfully submitted,


                                                         /s/ Alkistis G. Meimaris___
                                                         Alkistis G. Meimaris
                                                         Admitted pro hac vice
                                                         240 Fifth Avenue, Suite M250
                                                         New York, New York 10001
                                                         (201) 615 3220
                                                         Email:  **alkistism@aol.com**