**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x

HELEN MEIMARIS, *on behalf of herself and as* :
*Executrix and Legal Representative of the Estate of* :
*Alkiviades Meimaris*, :
     :
                       Plaintiff, :
     :
         -against- :
     :
JOSEPH E. ROYCE, TULIO PRIETO, LAWRENCE A. :
BLATTE, TBS SHIPPING SERVICES INC., and :
GUARDIAN NAVIGATION, :
     :
                     Defendants. :

------------------------------------- x

MEMORANDUM DECISION
AND ORDER

18 Civ. 4363 (GBD) (BCM)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Helen Meimaris, on behalf of herself and as executrix and legal representative of

the Estate of her late husband Alkiviades Meimaris ("Decedent"), brings this action against

Defendants Joseph E. Royce, Tulio Prieto, Lawrence A. Blatte, TBS Shipping Services Inc., and

Guardian Navigation,[1] asserting claims of fraud, fraudulent inducement, conspiracy to commit

fraud, and breach of fiduciary duty. (Third Am. Compl. and Demand for Jury Trial ("TAC"), ECF

No. 62.) All Defendants move to dismiss Plaintiff's complaint for failure to state a claim pursuant

to Federal Rule of Civil Procedure 12(b)(6). (Notice of Mot. to Dismiss Third Am. Compl. and

Stay Disc. ("Blatte & Royce Notice"), ECF No. 69; Notice of Mot., ECF No. 72 ("Prieto Notice");

Notice of Mot. to Dismiss Third Am. Compl. and for Stay of Disc. ("TBS & Guardian Notice"),

ECF No. 75.) Defendants Royce, Blatte, TBS Shipping, and Guardian also move to dismiss for

---

[1] Three other Defendants named in the complaint—Jamie Leroux, Gruposedei, and Tecnisea—were never
served and never appeared. Plaintiff voluntarily dismissed her claims against these Defendants on May 13,
2019. (Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), ECF No. 109.)

lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Blatte & Royce Notice; TBS & Guardian Notice.)[2]

Before this Court is Magistrate Judge Barbara C. Moses's August 20, 2019 Report and Recommendation (the "Report"), recommending that Defendants' motions to dismiss be granted.[3] (Report, ECF No. 113, at 3.) Specifically, the Report recommends that Plaintiff's individual claims be dismissed without prejudice pursuant to Rule 12(b)(1) and that all remaining claims be dismissed with prejudice pursuant to Rule 12(b)(6). (*Id.*) Magistrate Judge Moses advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 36.) Plaintiff filed timely objections. (Pls.' Objs. to Mag. J.'s R. & R. ("Pl.'s Objs."), ECF No. 116.) Defendants filed responses to such objections. (Mem. of Law in Resp. to Pls.' Objs. to Mag. J. Moses' Aug. 20, 2019 R. & R., ECF No. 118; Def. Prieto's Mem. of Law in Resp. to the Objs. by Pls. to the R. & R. by Mag. J. Moses, ECF No. 119; Mem. of Law in Resp. to Pls.' Objs. to Mag. J.'s R. & R. [ECF No. 116], ECF No. 120.)[4]

Having reviewed Magistrate Judge Moses's Report, as well as Plaintiff's objections and Defendants' responses, this Court ADOPTS the Report in full and overrules Plaintiff's objections. Accordingly, Defendants' motions to dismiss are GRANTED.

---

[2] Royce, Blatte, TBS Shipping, and Guardian further move for a stay of discovery pursuant to Federal Rule of Civil Procedure 26(c). (*Id.*) In the event that Plaintiff's complaint survives their motion to dismiss, Royce and Blatte move to strike certain allegations from the complaint. (Blatte & Royce Notice.)

[3] The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

[4] Because Plaintiff filed her objections to the Report on August 31, 2019, Defendants' responses to her objections were due by September 14, 2019. *See* Fed. R. Civ. P. 72(b)(2). The responses filed by Prieto, TBS Shipping, and Guardian on September 16, 2019 were therefore untimely. Notwithstanding the untimeliness of these responses, this Court's holdings remain the same for the reasons stated herein.

## I.   FACTUAL BACKGROUND

This action arises out of an alleged scheme by Defendants to squeeze Decedent out of his ownership stake in a privately-held company called TBS Commercial Group and his shares in a NASDAQ-listed affiliate called TBS Shipping International, all in connection with TBS International's "prepackaged" Chapter 11 bankruptcy reorganization. (*See* TAC ¶ 13.) The scheme was allegedly carried out in 2011 and 2012. (*See* ¶¶ 6–13.)

Specifically, Plaintiff alleges that Decedent tried "on various occasions" to sell his shares in TBS International, (*id.* ¶ 77), but that Royce and Blatte discouraged him from doing so, (*id.* ¶ 79). Plaintiff alleges that in reliance on Royce and Blatte's statements, Decedent refrained from selling any shares, (*id.* ¶ 80), not realizing that Royce and Blatte were selling their own, (*id.* ¶ 39). According to Plaintiff, Royce and Blatte "knew that [TBS International] would be going into a [bankruptcy] reorganization" and therefore "wanted to get rid of some of their shares so as not to lose money[] from a drop in share price." (*Id.* ¶ 86.) Indeed, by 2010 or 2011, a "decision was made" for TBS International "to enter into a reorganization." (*Id.* ¶ 37.) Around the same time, from October through December 2011, Royce and Prieto allegedly "tried on several occasions to have [Decedent] give up his . . . 10% ownership . . . in TBS Commercial." (*Id.* ¶ 105.) Decedent refused to do so, however. (*Id.* ¶ 10.)

Meanwhile, sometime in 2011, Decedent was allegedly approached with a business opportunity by Jaime Leroux, the President of a TBS Commercial affiliate called TBS Ecuador. (*Id.* ¶ 50.) Namely, Leroux asked Decedent to buy interest in property that Leroux was considering purchasing. (*Id.*) According to Plaintiff, when Decedent informed Royce and Blatte about the offer, they told Decedent that he could not enter into the agreement with Leroux "as it was in conflict with [Decedent's] interests in TBS." (*Id.* ¶¶ 65–66.) Decedent allegedly relied on these

3

misrepresentations and, "to his detriment," did not enter into the agreement with Leroux, (*id.* ¶ 68), while Royce and Blatte proceeded to purchase the property in their own names and in the name of TBS Commercial, (*id.* ¶ 50).

Plaintiff alleges that in 2012 or 2013, Leroux again approached Decedent, this time to ask for paperwork documenting Decedent's interest in TBS Commercial. (*Id.* ¶¶ 52, 129.) Leroux allegedly promised to "protect [Decedent's] interests" from Royce and Blatte, (*id.* ¶ 52), and to "protect [Decedent's] interests in TBS Ecuador" from Royce, Blatte, and McNelis, (*id.* ¶ 53).

TBS Shipping and several of its subsidiaries and affiliates filed for bankruptcy on February 6, 2012. (Decl. in Supp. of Mot. to Dismiss Third Amend. Compl. ("Decl."), Ex. 1 (Bankruptcy Disclosure Statement), ECF No. 70-1.) A bankruptcy court approved their proposed reorganization plan on March 29, 2012, after overruling two objections, neither of which were from Decedent. (Decl., Ex. 3 (Bankruptcy Confirmation Order), ECF No. 70-3.) The reorganization plan became effective on April 12, 2012. (Notice of Effective Date, *In re TBS Shipping Services Inc.*, No. 12-22224 (RDD), ECF No. 155.)

Subsequently, during the summer of 2013, Decedent learned that "his shares in TBS Commercial . . . no longer existed," that his "friends and partners" had "squeezed [him] out of his interests in TBS International and TBS Commercial," and that they "had used TBS Commercial . . . as part of the Reorganization package with the banks for TBS International," (TAC ¶ 13), without his consent, (*id.* ¶ 43). In addition, in 2014, Leroux informed Plaintiff and her daughter that Decedent's shares in TBS Ecuador "no longer existed" and "were in the hands of" Blatte, Royce and McNelis. (*Id.* ¶ 54.)

Plaintiff and the Estate first filed suit in New York State Supreme Court on April 3, 2018. (Compl. and Demand for Jury Trial, ECF No. 33-1.) After discontinuing their state court action

4

on May 14, 2018, (Defs. Royce & Blatte's Letter dated June 25, 2018, ECF No. 33, at 2), they commenced the instant action on May 21, 2018, asserting substantially the same claims against the same defendants, (Compl. and Demand for Jury Trial, ECF No. 12).[5]  On May 23, 2018, they filed an amended complaint. (Am. Compl. and Demand for Jury Trial, ECF No. 18.)  They filed a second amended complaint on June 1, 2018, without having obtained Defendants' consent or this Court's approval, and therefore in violation of Federal Rule of Civil Procedure 15(a)(2).  (Am. Compl. and Demand for Jury Trial, ECF No. 25.)  On July 4, 2018, they moved for leave to further amend the second amended complaint, (Mot. to Amend Compl. and Demand for Jury Trial Pursuant to F.R.C.P. 15(a)(2), ECF No. 41), and refiled substantially the same motion on July 12, 2018, this time attaching a proposed third amended complaint, (Mot. to Amend Compl. and Demand for Jury Trial Pursuant to F.R.C.P. 15(a)(2), ECF No. 47; Third Am. Compl. and Demand for Jury Trial ("Proposed TAC"), ECF No. 47-2).

On August 22, 2018, this Court granted Plaintiff and the Estate's motion for leave to file a third amended complaint, (Mem. Decision and Order dated Aug. 22, 2018, ECF No. 58, at 1), which Plaintiff did on September 24, 2018, (TAC).[6]  Plaintiff asserts seven claims in the complaint, brought in her individual capacity and as executrix and legal representative of the Estate.[7]  On October 1, 2018, all Defendants filed their motions to dismiss and for related relief. (Blatte & Royce Notice; Prieto Notice; TBS & Guardian Notice.)

---

[5] Plaintiff and the Estate previously attempted to file their complaint on the Case Management/Electronic Case Files ("ECF") system on May 17, 2018 and May 18, 2018, but it was rejected and terminated due to filing errors. (*See* ECF Nos. 1, 4, 8, 10.)

[6] The same day, she filed a letter motion requesting leave to again amend the complaint. (Pl.'s Letter dated Sep. 24, 2018, ECF No. 63.)  Magistrate Judge Moses denied the request.  (Order dated Sept. 25, 2018, ECF No. 65.)

[7] Among the changes made to the complaint was to list Plaintiff in her capacity as executrix of the Estate rather than the Estate as a separate plaintiff.

5

## II.   LEGAL STANDARDS

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Rule 12(b)(1) Lack of Subject Matter Jurisdiction.

The "proper procedural route" to challenge Article III standing is a motion for lack of subject matter jurisdiction under Rule 12(b)(1). *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) (citation omitted). Whether a plaintiff has standing addresses whether she is entitled to have a court decide the merits of a dispute. *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014). The plaintiff bears the

6

burden of establishing standing. *Id.* at 84 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)). The burden of proof applies to "each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citation and internal quotation marks omitted). To have Article III standing, the plaintiff must show that (1) she has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and the defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. *Lujan*, 504 U.S. at 560–61. In essence, "the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (citation omitted).

In deciding a 12(b)(1) motion, the court "must accept as true all material factual allegations in the complaint, but should refrain from drawing any inferences in favor of the party asserting jurisdiction." *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citing *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)). "[U]nder Rule 12(b)(1), [a court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings[.]" *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

## C. Rule 12(b)(6) Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the

7

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[8]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at \*3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

## D. Rule 9(b) Heightened Pleading Standard.

In addition to meeting the requirements of Rule 12(b)(6), a plaintiff alleging fraud or mistake must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires such a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this standard, "a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 Fed. Appx. 744, 747 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). In other words, a plaintiff

---

[8] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda,* 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

alleging a cause of action sounding in fraud must set forth with sufficient particularity the "who, what, when, where[,] and how of the alleged fraud." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citation omitted).

Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 147 (S.D.N.Y. 2014) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)) (internal quotation marks omitted). "The requirements of Rule 9(b) are 'not satisfied by a complaint in which defendants are clumped together in vague allegations.'" *Polar Int'l. Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (citation omitted).

## III.  PLAINTIFF'S CLAIMS ARE DISMISSED

Magistrate Judge Moses correctly found that dismissal of Plaintiff's complaint is warranted, given that (1) Plaintiff lacks standing to sue in her individual capacity; (2) the fifth cause of action charges only Leroux, whom Plaintiff voluntarily dismissed from this action; and (3) the remaining claims that Plaintiff asserts as executrix and legal representative of the Estate are all time-barred under New York's six-year statute of limitations.

### A.  Plaintiff Lacks Standing to Bring Suit in Her Individual Capacity.

Magistrate Judge Moses appropriately found that Plaintiff lacks standing to sue in her individual capacity, since Plaintiff had no personal stake in the shares and other business interests at issue in this action, and therefore suffered no injury in fact as a result of Defendants' conduct. (Report at 22–26.) To allege "a personal stake in the outcome of the controversy," *Warth*, 422 U.S. at 498, Plaintiff must demonstrate "an invasion of [her own] legally protected interest." *Lujan*, 504 U.S. at 560. Here, as noted in the Report, "[a]ll of the interests that

9

[D]efendants allegedly invaded belonged to [Decedent]." (Report at 23.) For example, it was Decedent, not Plaintiff, who owned interests in TBS International, TBS Commercial, and TBS Ecuador; was allegedly denied the Ecuadorian business opportunity; was allegedly denied the right to participate in the debt restructuring of TBS International; and who had a right to veto the use of TBS Commercial in such restructuring. (*Id.*)

Plaintiff objects to Magistrate Judge Moses's finding by arguing that Plaintiff, as Decedent's wife and partner and as beneficiary under the Estate, has the requisite "personal stake" and "legally protected interest[]." (Pl.'s Objs. at 23.) She notes that she and Decedent "had reciprocal wills, owned their business[es] jointly[,] owned all property jointly and had joint bank accounts," and that Plaintiff "is the person who would directly benefit from [Decedent's] work and holdings." (*Id.*) Plaintiff reiterates the argument she made to Magistrate Judge Moses. (*See, e.g.*, Mem, of Law in Opp'n to Defs., Royce and Blatte's Mot. to Dismiss Pls.' Third Am. Compl. and Defs.' Request to Stay Disc., ("Pl.'s Opp'n to Royce & Blatte Mem."), ECF No. 79, at 7–8 ("[Plaintiff and Decedent] held bank accounts jointly, they held all of their real property jointly and there business' [*sic*] and various companies jointly. They had reciprocal wills leaving all of their interests . . . to the surviving spouse, each other. . . . As a beneficiary under [Decedent's] will, [Plaintiff] has standing to sue.").) As Magistrate Judge Moses correctly found, however, even assuming, *arguendo*, that these allegations were included in the complaint, they would not confer standing upon Plaintiff to sue in her individual capacity. (Report at 24.) Indeed, shared home ownership or bank accounts or reciprocal wills "does not automatically give wives (or husbands) standing to sue for economic injuries allegedly inflicted on their marital partners." (*Id.* (collecting cases).) Nor does a beneficiary of a will have standing, solely on that basis, to bring suit for economic injuries inflicted on the testator during his lifetime. *See Gass v. Mamedova-Braz*, 2017

WL 3588944, at *7, n.13 (S.D.N.Y. Aug. 18, 2017). Therefore, Plaintiff's individual claims are dismissed.

Plaintiff's additional objection regarding the standing issue is to Magistrate Judge Moses's reliance on New Jersey law "to support her conclusions." (Pl.'s Objs. at 23.) Specifically, Plaintiff argues that "while New Jersey [l]aw gives [Plaintiff] the capacity to sue on behalf of the Estate, it does not govern this case," and that it is therefore "inaccurate" and "inappropriate" for Magistrate Judge Moses "to quote New Jersey [c]ase law to support her conclusions." (*Id.*) Plaintiff's argument is without merit. Federal Rule of Civil Procedure 17(b)(1) expressly states that the capacity to sue "for an individual who is not acting in a representative capacity" is determined by "the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1); *see also Museum of Modern Art v. Schoeps*, 549 F. Supp. 2d 543, 546 (S.D.N.Y. 2008) ("Under Federal Rule of Civil Procedure 17(b)(1), the capacity to sue or be sued of 'an individual who is not acting in a representative capacity' is determined 'by the law of the individual's domicile.'") Here, because Plaintiff's domicile is New Jersey, (TAC ¶¶ 19, 24), her capacity to sue as an individual is determined by New Jersey law.

## B. Plaintiff's Fifth Cause of Action Is Dismissed Because It Charges Only an Already Dismissed Defendant.

Magistrate Judge Moses also correctly found that Plaintiff's fifth cause of action, captioned as "[f]raudulent transfer of [Decedent's] interests in TBS Ecuador by Leroux," should be dismissed, as it charges only Leroux, who is no longer a defendant in this action. (Report at 26 (quoting TAC at 19).) Plaintiff objects to this finding, contending that this cause of action also mentions "the theft of [Decedent's shares in TBS Ecuador] by Defendants Royce and Blatte." (Pl.'s Objs. at 5.) Plaintiff argues that the complaint "clearly states that . . . Leroux helped enable the transfer of [Decedent's] shares in TBS Ecuador[] to Defendants Royce and Blatte," who are

11

"equally part of the [f]ifth cause of action." (*Id.*) She further argues that the complaint alleges that "all Defendants committed fraud and [that] all Defendants breached their fiduciary duties owed to [Decedent]." (*Id.* at 8.) According to Plaintiff, "[t]here is nothing vague or conclusory" about her assertions that "[t]he shares were in [Decedent's] hands and then they were gone," and that "[t]he shares then reappeared in the hands of the Defendants, Royce and Blatte." (*Id.* at 9.) Finally, Plaintiff objects to Magistrate Judge Moses's finding that Plaintiff "failed to make any allegation that Royce and Blatte made representations to [Decedent] with regard to the TBS Ecuador shares," since their alleged theft of Decedent's shares "amounted to fraud." (*Id.*)

Because Plaintiff made substantially the same arguments to Magistrate Judge Moses, this objection need only be reviewed for clear error. (*See* Pl.'s Opp'n to Royce & Blatte Mem. at 4 ("The fifth cause of action asserts that Messrs. Royce and Blatte breached the fiduciary duty owed to [Decedent] by virtue of them being business partners by causing and being part of the fraudulent transfer and disappearance of [Decedent's] shares in TBS Ecuador.").) Even on *de novo* review, however, Plaintiff's arguments fail. As a preliminary matter, the caption for the fifth cause of action mentions *Leroux* but none of the other Defendants, and the allegations that follow focus on *Leroux's* alleged misconduct. The only allegations about the other Defendants are that Decedent's shares were "stolen from him by Mr. Royce and Mr. Blatte," (TAC ¶ 135), and that the other Defendants "committed statutory fraud and common law fraud [and] breached the duty of care, duty of loyalty and duty of honesty owed to [Decedent]," (*id.* ¶ 138). Such vague and conclusory allegations that a defendant committed theft or fraud are insufficient to plead a cognizable claim, particularly under the heightened pleading standard of Rule 9(b). *See Kester*, 23 F. Supp. 3d at 252. Accordingly, because the fifth cause of action pertains only to Leroux, who is no longer a defendant in this action, this cause of action is dismissed.

12

## C. Plaintiff's Remaining Claims Are Dismissed As Time-Barred.

Magistrate Judge Moses properly determined that Plaintiff's remaining causes of actions are time-barred. (Report at 27–35.) "[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp.*, Inc., 547 F.3d 406, 425 (2d Cir. 2008)). Section 213(8) of the New York Civil Practice Law and Rule ("CPLR") sets forth the statute of limitations for fraud. It provides, in pertinent part, that:

> an action based upon fraud . . . must be commenced [within] the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

N.Y. C.P.L.R. § 213(8); *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 154 (2d Cir. 2012) (citations omitted). Under New York law, a claim based on fraud accrues as soon as "the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 550 (S.D.N.Y. 2016) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009)); *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 505 (S.D.N.Y. 2013) (same). Once a plaintiff has "first suffered loss," however, the limitations period begins. *IDT Corp.*, 907 N.E.2d at 273.

Here, as noted in the Report, all of Plaintiff's claims brought on behalf of the Estate "involve alleged misconduct which took place prior to or in connection with the [bankruptcy reorganization plan], which was approved by the Bankruptcy Court on March 29 and became effective on April 12, 2012." (Report at 27.) Indeed, many of the claims accrued even *before* 2012. (*Id.* at 29–31, 34.) Moreover, Decedent was aware of Defendants' alleged misconduct before his death in December 7, 2013, as evidenced by his November 30, 2013 affidavit describing such misconduct in detail. (*See* Decedent's Aff.) Accordingly, even under the most generous view

and using April 12, 2012 as the operative date, Plaintiff would have had to bring this suit no later than April 12, 2018. Plaintiff, however, did not commence this action until May 21, 2018, more than six years after the reorganization plan went into effect and approximately four and a half years after Decedent drafted his affidavit upon which the complaint is largely based.[9]

Plaintiff's objections to Magistrate Judge Moses's findings are perfunctory because they largely repeat the arguments that she made in her original briefs. Namely, in both her oppositions to Defendants' motions to dismiss and in her objections to the Report, Plaintiff insists that all of her claims are timely under the "continuous wrong doctrine," which tolls the limitations period to the commission of the last wrongful fact. (*Compare* Pl.'s Opp'n to Royce & Blatte Mem. at 7 ("[I]n all instances [Plaintiff is] within the statute of limitations of the . . . continuous wrong doctrine."), *and* Mem. of Law in Opp'n to Company Defs.' TBS Shipping Services and Guardian Navigation Mot. to Dismiss Pls.' Third Am. Compl. and in Opp'n to Company Defs.' Request to Stay Disc. ("Pl.'s Opp'n to TBS Shipping & Guardian Mem."), ECF No. 81, at 7 ("[U]nder the "continuous wrong" doctrine, the statute does not begin to toll until the last act of wrongdoing. . . . [I]n all instances [Plaintiff is] within the statute of limitations under the continuous wrong doctrine."), *and* Mem. of Law in Opp'n to Def. Tulio Prieto's Mot. to Dismiss Pls.' Third Am. Compl. ("Pl.'s Opp'n to Prieto Mem."), ECF No. 83, at 7 ("[I]n all instances [Plaintiff is] within the statute of limitations of the . . . continuous wrong doctrine."), *with* Pl.'s Objs. at 11 ("[A]ll of Plaintiff['s] claims fall under the continuous wrong doctrine. Under the continuous wrong doctrine the limitations period is tolled to include the commission of the last wrongful act.")). Plaintiff similarly reiterates her argument that Defendants' alleged misconduct began as far back as 2008

---

[9] As noted above, although Plaintiff attempted to file the complaint on May 17, 2018 and May 18, 2018, such filings were terminated due to Plaintiff's filing errors. (*See* ECF Nos. 1, 4, 8, 10.) This action therefore did not commence until Plaintiff's proper filing of the complaint on May 21, 2018. (*See* ECF No. 12.)

14

and ended in 2018, when the relevant TBS companies dissolved. (*Compare* Pl.'s Opp'n to Royce

& Blatte Mem. at 9 (alleging that Defendants' wrongdoing began in 2008 and ended with the

dissolution of the relevant TBS companies), *and* Pl.'s Opp'n to TBS Shipping & Guardian Mem.

at 7 (same), *and* Pl.'s Opp'n to Prieto Mem. at 7 (same), *with* Pl.'s Objs. at 19 (same).)[10]

  As Magistrate Judge Moses correctly found, however, Plaintiff "misconstrues the theory

upon which [she] relies." (Report at 33.)  Under the continuing wrong doctrine, a series of

continuing wrongs may toll the statute of limitations until the commission of the last wrongful act.

*Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (N.Y. App. Div. 2017) (citation omitted).  However,

the "[t]he doctrine 'may only be predicated on continuing unlawful acts and not on the continuing

effects of earlier unlawful conduct.  The distinction is between a single wrong that has continuing

effects and a series of independent, distinct wrongs.'"  *Id.* (citations omitted).  Here, "each of

[Plaintiff's] surviving claims is predicated upon distinct conduct that occurred more than six years

before this action was filed." (Report at 34.)  Specifically, some of the alleged wrongful acts

"occurred well prior to TBS International's bankruptcy," while others "occurred in preparation for

the bankruptcy proceeding." (*Id.*)  They were all complete by April 12, 2012 "at the latest." (*Id.*)

Plaintiff's reliance on the continuing wrong doctrine is therefore misplaced.  Accordingly, because

Plaintiff's remaining claims are time-barred under New York's six-year statute of limitations for

fraud, these claims are dismissed.[11]

---

[10] In Plaintiff's oppositions to Defendants' motions to dismiss, she alternatively argued that the last wrongful act occurred on June 29, 2012, when the bankruptcy case was closed. (*See, e.g.*, Pl.'s Opp'n to Royce & Blatte Mem. at 9; Pl.'s Opp'n to TBS Shipping & Guardian Mem. at 22–23; Pl.'s Opp'n to TBS Shipping & Guardian Mem. at 12–13.)  In her objections to the Report, however, she argues instead that the alternative end date of the last wrongful act is 2014, with the "illegal transfer and theft of [Decedent's] TBS Ecuador shares." (*See, e.g.*, Pl.'s Objs. at 10–13, 17, 19–20.)

[11] Royce, Blatte, TBS Shipping, and Guardian argue that because Plaintiff's first, third, fifth, and seventh causes of action seek monetary damages, rather than equitable relief, for Defendants' alleged fiduciary breaches, these causes of action are subject to the three-year statute of limitations under CPLR § 214(4), which governs "action[s] to recover damages for an injury to property." (Mem. of Law in Supp. of Defs.'

15

## IV.   AMENDMENTS TO THE COMPLAINT WOULD BE FUTILE.

Finally, Plaintiff shall not be afforded another opportunity to amend her complaint because any amendment would be futile. Federal Rule of Civil Procedure 15(a) provides that a court should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). "A district court has broad discretion in determining whether to grant leave to amend." *Perez v. 117 Ave. of the Americas Food Corp.*, 15-CV-8151 (JPO), 2016 WL 5415090, at *1 (S.D.N.Y. Sept. 27, 2016) (quoting *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)). However, "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). "Amendment is futile [if it] could not withstand a motion to dismiss, such as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)." *Griffith-Fenton v. Coldwell Banker Mortg.*, No. 13 CV 7449 VB, 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y.1996)).

Here, no additional factual allegations would cure the deficiencies present since Plaintiff's commencement of this action: her lack of standing to sue in her individual capacity and the untimeliness of the claims brought on behalf of the Estate. Moreover, Plaintiff had ample opportunity to try to address these deficiencies, including after Prieto first moved to dismiss her first and second amended complaints, and after the other Defendants previewed their own motions and identified the defects in Plaintiff's proposed third amended complaint. Plaintiff insisted,

---

Mot. to Dismiss the Third Am. Compl., ECF No. 71, at 8, 15–16, 21; Mem. of Law in Supp. of Mot. to Dismiss Third Am. Compl. and for a Stay of Disc. By Defs. TBS Shipping Services Inc. and Guardian Navigation Services Inc., ECF No. 76, at 18.) This Court need not determine whether any of Plaintiff's claims are indeed barred under CPLR § 214(4) because the claims are all barred even under the longer six-year statute of limitations under § 213(8).

16

however, that the operative complaint "has no fatal defects," and that Defendants' contentions about any pleading deficiencies were "patently wrong," "false," and "frivolous." (Pl.'s Letter dated July 16, 2018 at 2, 4–5; Reply to Company Defs.' Resp. to Mot. to Amend Compl. and Demand for Jury Trial Pursuant to F.R.C.P. 15(a)(2) at 4.) As such, Plaintiff's objection that Magistrate Judge Moses "is incorrect to not allow [Plaintiff] the opportunity to amend," (Pl.'s Objs. at 22), is overruled.[12]

## V.    CONCLUSION

Magistrate Judge Moses's Report is ADOPTED. Defendants' motions to dismiss, (ECF Nos. 69, 72, 75), are GRANTED. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
September 25, 2019

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

[12] Plaintiff's remaining objections are perfunctory because they do not address the substance of the Report or its legal reasoning. (*See, e.g.*, Pl.'s Objs. at 1 (objecting to Magistrate Judge Moses's contention that the complaint fails to explain how Royce and Blatte benefitted from Decedent not selling his shares); 2 (objecting to Magistrate Judge Moses's observation that there are no allegations in the complaint about how the Ecuadorian business opportunity would have been profitable for Decedent); 7 (objecting to the statement in the Report that discovery has not commenced due to the pendency of the motions to dismiss).) Indeed, accepting these objections as true still would not change the facts that (1) Plaintiff lacks standing as an individual, (2) Plaintiff's fifth cause of action charges only an already dismissed Defendant, and (3) Plaintiff's remaining claims brought on behalf of the Estate are time-barred. Accordingly, these objections are overruled.